## SARAH BODWELL *versus* SIMON B. WEBSTER.

Where, upon a loan of money, a scrivener draughted an absolute deed of land and a bond of defeasance of the same date, and the parties executed them, and the deed was delivered to the grantee, but by the agreement of the parties at the same time, the bond was left in the hands of the scrivener, to be delivered to the obligee, if he should within a limited time repay the money, but otherwise to the obligor, and the money was not repaid, it was *held*, that the bond was an escrow, that it was r.gntfully delivered up to the obligor after the time for the repayment of the money had expired, and that the transaction did not constitute a mortgage.

BILL in equity to redeem.. The plaintiff alleges, that on February 22, 1827, her husband Isaac Bodwell, being seised of the land, conveyed the same to Daniel Merrill as security for a loan of $450, and that Merrill at the same time executed and delivered to Bodwell a bond of even date with the deed, for the reconveyance of the land upon payment of the money within three years ; that Bodwell paid two years' interest on the money lent ; that he died in October 1830, and the plaintiff was appointed administrator of his estate ; that in March 1831, Merrill conveyed the land to the defendant, he well knowing the contents of the bond of defeasance ; that the defendant, after the death of Bodwell, without the leave and against the will of the plaintiff, obtained the bond from one Carlton, the agent of Bodwell, and had refused to deliver it to the plaintiff ; and that on September 15, 1831, the plaintiff requested the defendant to state an account of the sum due on the mortgage.

The defendant, in his answer, claims the land as his absolute property. He states that Merrill, on March 9, 1831, by deed of release and quitclaim, conveyed the land to him for the consideration of $525 ; and he denies that he took the bond from Carlton, and that he knew the contents of it at the time when Merrill made the conveyance to him.

The plaintiff, in her replication, avers that on March 9, 1831, before and at the time of the execution of the deed to the defendant, Merrill told him all the facts and circumstances attending the loan and the execution of the deed to Merrill and of the bond, which apprized the defendant that the transaction was a mortgage.

<div style="margin-left:0">Bodwell<br>v.<br>Webster.</div>

It appeared in evidence, that Merrill lent Bodwell the sum of $450 ; that Bodwell's deed and Merrill's bond for reconveyance were both drawn by Joseph W. Carlton ; that they were dated and executed on the same day ; that Merrill took the deed, and that the bond was left in Carlton's hands, by the agreement of the parties ; that if Bodwell should produce to Carlton evidence that he had paid the sum named, with interest annually, any time within three years, he was to give the bond to Bodwell, but that if the money should not be paid within three years, he was to give the bond to Merrill ; that no evidence of payment was produced to Carlton, and so, according to the agreement, he delivered the bond to Merrill ; and that no note or bond for the money lent was given by Bodwell to Merrill.

*Nov. 9th.*   *Choate*, for the plaintiff, argued that as between the original parties, the deed and bond constituted a mortgage, notwithstanding it might have been intended that they should have a different effect.   *Scott* v. *McFarland*, 13 Mass. R. 309 ; *Foster* v. *Woods*, 16 Mass. R. 116 ; *Parks* v. *Hall*, 2 Pick. 211 ; *Rice* v. *Rice*, 4 Pick. 349 ; 4 Kent's Com. 135, 137, 139, 152, 153 and note ; *Newhall* v. *Burt*, 7 Pick. 157 ; *Hildreth* v. *Sands*, 2 Johns. Ch. R. 34.   The bond was not delivered as a mere escrow.   It was either delivered to Bodwell as a bond, and deposited in the hands of Carlton as the agent of both parties, or it was delivered to Carlton as a bond.   A delivery as an escrow should be noticed in the attestation.   Shep. Touch. 58 ; *Wheelwright* v. *Wheelwright*, 2 Mass. R. 452 ; *Hatch* v. *Hatch*, 9 Mass. R. 307 ; *Carey* v. *Rawson*, 8 Mass. R. 159.

*Saltonstall* and *Tenney* for the defendant.   Before the Court can apply to this case the principles of a court of equity, they must determine that by the rules of the common law the transaction between Bodwell and Merrill constituted a mortgage.   *Flint* v. *Sheldon*, 13 Mass. R. 443 ; *Kelleran* v. *Brown*, 4 Mass. R. 443 ; *Erskine* v. *Townsend*, 2 Mass. R. 493.   The bond was an escrow, and was not to be delivered as a deed except on a certain event, which did not happen. *Harrison* v. *Phillips Academy*, 12 Mass. R. 456 ; *Bickford* v. *Daniels*, 2 N. Hampsh. R. 71 ; *Lund* v. *Lund*, 1 N.

ampsh. R. 39. Whether a purchaser would be affected by actual notice of a bond of defeasance not recorded, has not been decided ; *St.* 1802, *c.* 44 ; Kent's Com. 135 ; but here it is not duly proved that the defendant had actual notice.

Putnam J. delivered the opinion of the Court. The question is, whether this transaction was a bargain and sale with a defeasance, made in such manner as in law to constitute a mortgage. The deed is absolute ; so the matter will depend upon the validity of the supposed defeasance.

The instrument, to make a valid defeasance, must be signed, sealed and delivered at the same time when the deed to which it refers was executed, so that it should be taken to be a part of the same, as if it were contained in the same deed. *Kelleran* v. *Brown*, 4 Mass. R. 443. It is not material that it should bear the same date with the deed, but it must be delivered at the same time when the deed is delivered. And deeds take effect from the delivery, and not from the dates which they bear.

We must decide by the rules of the common law whether there were a mortgage or not. *Erskine* v. *Townsend*, 2 Mass. R. 493. In the case at bar, the supposed defeasance bears the same date with the deed, and was without doubt signed and sealed at the same time. Then the inquiry is narrowed to the question, whether it was delivered to the obligee, at the time when he made and delivered his deed to the obligor. In point of fact it was never delivered to him or his legal representative. It was put into the hands of Joseph W. Carlton, a stranger to both of the parties. We have the deposition of Carlton, who wrote both the instruments, and who had the confidence of both of the parties to them. He says that Merrill took the deed, and that the bond was left in his hands by the agreement of the parties ; that if Bodwell should produce to him (Carlton) evidence that he had paid the sum named in the bond, with interest annually, any time within three years, or if the parties should be present and agree that the money was paid, he was to give the bond to Bodwell ; that if the bond were not paid within three years, he was to give it to Merrill ; that no evidence was ever

35 *

Bodwell *v.* Webster.

*April term,* 183ͻ

produced to him, that it had been paid ; and so, according to the agreement, he delivered the bond to Merrill. It is proved that Bodwell died within the three years, and it is not alleged that he ever paid the sum contained in the bond, but only some small part of the same ; something less than the interest. The administratrix of Bodwell now claims to redeem the estate, on the ground that the whole transaction taken together constitutes a mortgage.

Now it is certain that Bodwell never had the possession of the bond. Nevertheless, if it were delivered as an escrow, it would be clear, according to *Perryman's case*, 5 Co. 84, that *if the condition had been performed within the three years*, the bond would have been good ; for there was "*traditio inchoata*" in the life of the parties, and if there had been a performance of the condition, " then it would have taken its effect from the first livery before." But here the condition was not performed. It is from the necessity of the case, that the law allows the bond to have relation to the first delivery. As in Perk. 140 and 141, if a feme sole makes a writing and delivers it as an escrow upon conditions, and afterwards marries, if the conditions are afterwards performed, and the escrow is thereupon delivered as the deed of the woman, it shall be good, notwithstanding her coverture ; because at the time of the delivery of the writing as an escrow she was sole, and had a right to bind herself, and could not by her own act of marriage countermand the bailment. Br. Abr. *Relacion, pl.* 1, *S. P.* Other exceptions to the general rule, that an escrow takes its effect from the second delivery, are stated by *Parsons* C. J. in *Wheelwright* v. *Wheelwright*, 2 Mass. R. 454.

It is sufficient that the law places the legal representative of the deceased party obligee in as good a situation as the obligee himself would have been in if he had lived. Now it is clear from Perk. 142, that if the obligee Bodwell had got the bond out of the possession of the bailee (Carlton) before the condition were performed, it would not have bound the obligor. It is trite and common learning, that if the bond be not delivered by the party himself or some other *by his assent*, it shall not bind. Now in the case at bar

the parties did not intend that the bond should be delivered to the obligee, unless he paid the money according to the condition. No fraud is suggested. Merrill had no collateral promise or undertaking whereby he could have compelled Bodwell to pay the money ; and although it is said in *Rice* v. *Rice,* 4 Pick. 349, that it was " not the less a mortgage because there was no collateral personal security for the debt taken at the time," yet, speaking for *myself only,* I do think that the want of mutuality in regard to the recovery of the debt, is a circumstance that enters much into the equity of the case. It may be that the estate conveyed will prove insufficient to pay the money advanced, yet the grantee must take it, depreciated as it may be, in full satisfaction. Why, when it should rise or exceed it in value, he should not have the advantage, is not for me very easy to see. As he must bear the loss in the former, it would seem to me to be equitable that he should have the gain in the latter case, fraud being out of the question. Besides, in the case of *Rice* v. *Rice,* the defeasance was made at the same time with the deed, and the parties must be presumed to have agreed that it should be defeated according to the legal operation of the defeasance. And in *Flint* v. *Sheldon,* 13 Mass. R. 448, *Jackson* J. relied upon the want of mutuality as one circumstance which tended to disprove a mortgage : and few judges, in this country or England, have more enlightened views of equity law than that learned jurist. If Bodwell had survived the three years, and had not performed the condition of the bond, we think it perfectly clear that he could not have claimed it of the bailee. Carlton, by Bodwell's assent, must have delivered it to Merrill. If he had delivered it to Bodwell without performance, it would be clear that it would have been without the assent of Merrill. So Bodwell had in fact no possession or right of possession of the bond, and his legal representative cannot legally claim more than he could if he were living.

But it is contended for the plaintiff, that the bond was not delivered as an escrow, but as an executed deed.

We are then to consider what is the delivery of a deed as an escrow In Shep. Touchst. 58, " an escrow is said

Bodwell
*v.*
Webster

to be, where one doth make and seal a deed and deliver it unto a stranger, until certain conditions be performed, and then to be delivered to him to whom the deed is made, to take effect as his deed." And it is said that this bond was not delivered as an escrow *eo nomine*, according to the examples set down in the Touchstone, but only upon condition that if Bodwell should pay &c., then that the bond should be delivered. We cannot yield to so narrow a construction. The terms upon which the parties agreed that the writing should be delivered to the one or to the other, came, as we have seen, substantially, nay, exactly within the *definition* of an escrow. It is true tnat tne word *escrow* was not used, and it is very possible, indeed very probable, that neither of the parties ever heard and understood that word. But if they did just the things required to make the delivery of the bond to be and operate as an escrow, the law will adopt it as such, notwithstanding it was not called by its legal name It would be a reproach to the law if a different construction should be put upon the act and intent of the parties.*

In 13 Viner, *Faits*, (N. a. 3) *pl.* 3, it is stated, that if a man seals a deed and delivers it to a third person to keep till a certain condition be performed, and then to deliver it to the obligee, &c., there if he delivers it contrary to the condition, and an action is brought, the defendant may plead this matter and conclude, that it was not his deed, because it was never delivered as a deed. Viner cites 27 *H.* 6, 7 ; and there the deed of release was *pleaded* as having been delivered to one T. as an *escrow.* Viner has digested the case, however, without using the word *escrow.* His digest, so far as it goes, is a translation from Bro. Abr. *tit. Non est factum, pl.* 4.

We are entirely satisfied that the facts stated by Carlton are sufficient to prove that the writing was delivered to him to be kept as an escrow, and not as a deed.

In the case of *Carey* v. *Rawson*, 8 Mass. R. 159, the deed of bargain and sale and the defeasance were executed at the same time, and the defeasance was delivered to Rawson.

---

* See *Clark* v. *Gifford*, 10 Wende'l, 310.

Bodwell
*v.*
Webster.

But it was agreed that the deed of bargain and sale, after it was executed and after it should be recorded, should be deposited until a certain day, when it was to be delivered to Carey, if Rawson did not pay him a certain sum of money. The Court thought that the two deeds should be treated as one transaction. The money was not paid, and the deed was properly delivered to Carey. It was without doubt treated as the *deed* of Rawson *ab initio*. The counsel for Carey did not contend that it was delivered as an *escrow*, and the reporter said that he did not discover any great confidence in his claim to have it considered as an absolute deed. The counsel for the tenant said nothing at all. It must have been acknowledged as *the deed* of Rawson before it was recorded. The Court, under these circumstances, without doubt considered it as having been deposited *as a deed*, and not as an *escrow* to be delivered as a deed upon condition. If that were the case, the authority in Shep. Touch. 59, is clear, that the obligation took effect presently, and without the performance of the conditions. In that view of the case both instruments might have been considered as executed and delivered at the same time, and so part of one transaction.

We think that the notice which it is proved the defendant had, relating to the transactions between Merrill and Bodwell, is immaterial ; being all of opinion, that if the action were brought against Merrill and he had not conveyed to the defendant, it could not be supported : for, as before stated, we are all satisfied that the writing was delivered as an escrow to be delivered to the obligee by the bailee upon certain conditions to be performed, and not otherwise ; that the conditions never were performed ; that therefore it could not lawfully have been delivered by the bailee to the obligee or his legal representative, but was lawfully delivered up to the o ligor.

**Bill dismissed.**