## WALLER v. JAEGER ET AL.

1. **Taxation**: ASSESSMENT: POWER OF CITY COUNCIL. The charter of the city of Dubuque confers upon its council the power to add to the list of taxable property; returned by the assessor, any which should appear to have been omitted therefrom.

2. ——: ——: MORTGAGE. Where the purchaser of real estate executed a lease to the vendor, stipulating that at any time within five years the latter should have the privilege of repurchase, and that, meanwhile, he should pay all the taxes upon the leased property: *Held*, that the transaction did not constitute a sale, and that the intention of the vendee was to make a loan in such a manner as to avoid the payment of taxes. The city council properly assessed the real estate to the vendor, and the consideration of the alleged sale to the vendee, as money and credits.

*Appeal from Dubuque District Court.*

WEDNESDAY, SEPTEMBER 23.

THE plaintiff filed in the Dubuque District Court a petition. for writ of certiorari, alleging that during the whole of the year 1872 he was the owner and holder of the legal title by

Waller v. Jaeger.

purchase, of the following lots, situate in the city of Dubuque, to-wit: Lots No. 384 and 385, conveyed to him by deed from the Dubuque Cabinet Makers' Association, and dated May 16, 1871; also, lot No. 97, conveyed to him by deed from Catharine and John Mullany, dated February 8, 1871; also, lot No. 81, and the south 24 9-12 feet of lot No. 82, conveyed to him from Herman and Christina Chadwick, by deed dated May 5, 1871. That all of these were duly recorded and entered in the office of the auditor for taxation. That at the time for the assessment of property for the taxes of the year 1872, plaintiff returned to the assessor said lots for assessment as his property, and at the same time returned that he had no moneys or credits other than United States bonds, except an amount of about one thousand dollars in judgment. That plaintiff appeared at the time appointed by notice for examining his assessment, and found that he was not assessed in accordance with the assessor's return, but that the city council afterward struck from the list of property returned by him, the lots above named, and assessed the same to the respective vendors above referred to, and assessed plaintiff $20,000, moneys and credits.

That plaintiff presented his petition before the city council, setting forth that he was wrongfully assessed for moneys and credits to the amount of $19,450, and asking that the same might be stricken from the assessment books, which petition was refused by the city council, except so far that a deduction was made on the whole amount of $2,000, thus leaving the sum of $17,450 of money and credits illegally assessed to plaintiff.

That the city council disregarded the return and statement of plaintiff, and assumed that the lots above named were conveyed to plaintiff as securities for money loaned, and that the deeds made to plaintiff for the same were equitable mortgages only, and that the moneys paid by plaintiff were loans, and chargeable to him as moneys and credits; and that all these assumed facts are untrue. Petitioner prays that a writ of certiorari may issue to defendants commanding them to certify a transcript of the records and proceedings in reference to the assess-

ment of plaintiff's property, and that said proceedings may be reviewed and corrected.

A writ of certiorari was issued, to which the defendants, the city council of the city of Dubuque, amongst other things, made return in substance that the return by the assessor of the assessment for 1872, was duly referred to a committee of said council for examination and for equalization and correction, if necessary. That said committee recommended to the council that the several lots named in plaintiff's petition be stricken from the property assessed to plaintiff, and that the same be assessed to the respective vendors thereof; and that the amount of the considerations named in said conveyances be added to the moneys and credits of plaintiff for assessment as moneys loaned; and that said committee stated as reasons for such recommendation, that, from the transaction as it appeared upon the papers so recorded, they believed the conveyances to the plaintiff were a device to avoid taxation upon a loan of money, and that such conveyances are equitable mortgages to secure plaintiff for moneys loaned, and that said committee further believed that said plaintiff had other moneys and credits over and above the amount returned by him, and the amount of said conveyances, to the amount of $20,000. That said report and recommendation were adopted by the city council and the lots were stricken from the assessment of lands to plaintiff and assessed to the several parties as recommended, and the amount of moneys and credits assessed to plaintiff was increased to the sum of $20,000.

Defendants further return that the petition of plaintiff, praying that the assessments against him might be substantially restored in compliance with his return to the assessor, was referred to a committee of the council to examine and report; that said committee reported that plaintiff appeared before them in support of his petition, and in answer to the inquiry of said committee, stated as follows:

That he had invested his moneys in United States bonds to avoid taxation on the same for the reason that taxation thereon, if loaned, would reduce his income below what he would realize from the interest on such bonds. That the several parties

Waller v. Jaeger.

named as grantors in the conveyances to him of the lots described in his petition applied to him for loans of money, and offered him security by mortgage therefor, each upon the premises then owned by them; that said plaintiff in each case refused to make any loan of money, and so informed said parties, and gave his reasons as above stated; that on the further application of said parties, plaintiff stated to them that if they would sell him the lots he would purchase the same, if, upon examination he should find them worth the money they asked for the same, and he would then give them a lease of the same containing a privilege to purchase the same upon the terms stated in such lease.

That said parties thereupon sold and conveyed to him said lots respectively, and he paid them the consideration therefor expressed in said deeds, as purchase money therefor, and then executed with said parties respectively, leases of said lots, with privilege of purchase at different periods as therein expressed, of which none had as yet expired."

That the committee recommended that the prayer of plaintiff's petition be refused, and the recommendation was adopted by the council.

Defendants, for further return, admit that of the moneys and credits assessed to plaintiff for 1872, the sum of $9,000 is for the moneys claimed by him to have been paid as consideration for the purchase of said lots, and named in said conveyances, and added to his assessment as for money loaned, and that the further sum of $8,450 of said moneys and credits is for other moneys which they believed he had on loan, over the amount returned by him.

The leases, it is conceded, are all in the same form. A copy of one is attached to the return of defendants, the material portion of which is as follows: "To have and to hold the said above described premises, with the appurtenances, unto the said party of the second part, their executors, administrators and assigns, from the 16th day of May, in the year of our Lord, 1871, for and during the full term of five years, next ensuing, with the privilege of purchasing said premises at or before the end of said time, for the sum of five thousand dol-

lars, providing the said party of the second part shall fully and faithfully comply with and perform their part of this contract; then, if so, the said party of the first part agrees and binds himself, his heirs and assigns, to make or cause to be made, a good and sufficient deed, conveying said premises to said party of the second part or assigns. And the said party of the second part, in consideration of the leasing of the premises aforesaid by the said party of the first part to the said party of the second part, does covenant and agree with the said party of the first, his heirs, executors, administrators and assigns, to pay the said party.of the first part as rent for the said demised premises the sum of five hundred dollars per annum, payable in semi-annual payments of $250 each, to be paid at the end of each and every six months during said term, and to pay all taxes assessed against said premises during said term, and to keep the improvements upon said lots insured in the name and for the benefit of said Waller in the sum of four thousand dollars during the time this lease runs. And the said party of the second part further covenants with said party of the first part, that, at the expiration of the time in this lease mentioned, they will yield up the said demised premises to the said party of the first part, except in case of purchase as aforesaid, in as good condition as when the same were entered upon by the said party of the second part, loss by fire or inevitable accident and ordinary wear excepted." The lease further contains stipulations respecting the right to distrain and re-enter for non-payment of rent.

The cause was submitted on plaintiff's petition and defendants' return. The court set aside the action of the city council, raising the assessment of personalty from the amount returned by the assessor, and directed the council to cause said plaintiff to come before it on some day named, and be heard in regard to such assessment, and ordered that, should they fail to do so within thirty days, the return of the assessor shall be the amount of personalty plaintiff shall be taxed upon for the year 1872.

The court also found that the portion of the proceedings of the city council in regard to the taxes upon the lots named in

plaintiff's petition, which finds that the conveyances of said lots to plaintiff are equitable mortgages to secure loans of the consideration moneys named therein to the grantors, and striking said lots from his lists, and taxing the same to the parties in possession, was legal and binding, and affirmed the same. From this action plaintiff appeals.

*James Burt & Son*, for appellant.

*T. S. Wilson*, for appellee.

DAY, J.—The case presents for our consideration two questions: *First*. Has the city council power to change the assessment as returned by the assessor? *Second*. Do the circumstances disclosed justify the action of the council?

I. The charter of the city of Dubuque confers upon it power to provide for the assessment of all taxable property in the city, with reference to taxation for city purposes.

Section 4, chapter 32, of the revised ordinances of the city, is as follows: "The council shall, at its first regular meeting in September, appoint a committee on assessments, consisting of one alderman from each ward, to whom all appeals from the assessment shall be referred, who shall hear and decide upon all such appeals, and shall also equalize the assessment, if, in their judgment, it shall require revision, and shall report their proceedings to the council at the first regular meeting in October."

1. TAXATION: assessment: power of city council.

Section 739, of the Revision, provides that the Board of Supervisors of each county shall constitute a board for the equalization of the assessment, and shall have power to equalize the assessments of the several persons and townships of the county, and add to said assessment any taxable property not included in the assessment as returned by the assessors. We think it was intended in the section of the ordinance above named, to confer upon the committee of the council the same powers respecting city taxes, as is conferred upon the Board of Supervisors, in section 739 of the Revision respecting the taxes there contemplated.

This power is a very essential one, and without it any scheme of taxation would be incomplete. We are of opinion that, in a proper case, this committee of the council has power to add to the assessment list returned by the assessor, property which it is evident has been omitted therefrom.

II. The next question is not clear from doubt. Yet we feel constrained to hold that the circumstances of this case 2. ——:——: justified the committee of the council in the con-
mortgage. clusion that the consideration named in the several conveyances to plaintiff was a mere loan to the respective parties named, and that the form of the transaction was adopted merely to exempt the amount of the loan from liability for taxes. All the circumstances of the case are consistent with this conclusion. The plaintiff had money to loan. He was anxious to avoid the payment of taxes. The various vendors wanted to borrow, and in response to their application plaintiff suggested a deed to him, and a lease with the privilege of repurchasing. The rent reserved is just ten per cent upon the amount for which plaintiff agrees to re-convey.

But the strongest circumstance, perhaps, of all, is the fact that when plaintiff went before the committee of the council in support of his petition to be discharged from this assessment, he contented himself with merely detailing the fact and circumstances connected with the execution of the deeds and leases, and did not claim that there was a *bona fide* sale, nor that the transaction was not merely a loan.

A careful examination of the entire return of the council leads us, with but little hesitation, to the conclusion that there was no real sale of the property described in the petition, and that the intention was to make a loan in such manner as to avoid the payment of taxes. We are of opinion, therefore, that the judgment of the court below should be

AFFIRMED.