## Pearson *versus* Sharp et al.

1. A deed, absolute on its face, made prior to the Act of June 8th, 1881, may be shown to be a mere security for money advanced, or for the performance of some definite obligation; but to convert such a deed into a mortgage by parol evidence such evidence must be clear, explicit and unequivocal, and the parol defeasance must be shown to be contemporaneous with the deed.

2. A deed, absolute on its face, made prior to the Act of June 8th, 1881, may be shown to be in reality a mortgage, not only by direct evidence, but also by facts and circumstances clearly inconsistent with the deed being an absolute conveyance.

3. It does not follow, because a grantee in a deed, absolute on its face, has power to sell, that this power is not to be exercised only by way of the foreclosure of a mortgage into which the deed by sufficient and competent evidence may be converted.

4. Lance's Appeal, 2 Amerman, 456, distinguished.

January 21st, 1887. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J., absent.

ERROR to the Court of Common Pleas No 1, of *Philadelphia county :* Of January Term, 1887, No. 40.

Ejectment by George Pearson against Benjamin Sharp and Thomas Heathcote, executors of the last will and testament of Joseph F. Heathcote, deceased, *et al.* for a lot of land in the city of Philadelphia. Plea, not guilty.

On the trial before BIDDLE, J., the plaintiff showed title to the land described in the writ in himself derived from Thomas S. Bonsall, August 12th, 1868. The defendants showed title in Joseph F. Heathcote, derived from the plaintiff by deed in fee simple, dated April 7th, 1870.

This, the plaintiff alleged, was in reality a mortgage, and introduced testimony to support this allegation, which sufficiently appears in the opinion of the supreme court. He made twelve offers of evidence which the court overruled; these sufficiently appear in the following twelve assignments of error.

1. The learned court erred in overruling plaintiff's offer to read in evidence a letter written by Jos. F. Heathcote, dated Vineland, New Jersey, U. S., and addressed to the plaintiff, containing the following, *inter alia :* "The two houses that you used to live in are empty and not likely to rent soon again, as the water is so deep in them. I intend to sell all the property at Sixtieth and Vine streets, if I can, and I think this year will be the best, the expenses are so great and so few rents that it is not worth holding, and whatever is due to you after expenses are paid, I will let you have when I come to England," etc.. Which was attached to the depositions of Anna E. Walls and identified by her as a letter written to the plaintiff in answer to one making inquiries as to this very property, and directed to Mrs. Heathcote, plaintiff's sister.

2. The court erred in overruling plaintiff's offer to prove by John W. D. Neilds, that he painted the houses on Sixtieth street in 1878; that Heathcote said to him: "That this property was not exactly his; that he was paying out money for another man, George Pearson, who owned it, and he was taking charge of it; that he wished that he had nothing to do with it; and only had to do with it to protect his own interest; and that he had advanced money to George Pearson to build the houses and make the bricks.

3. The learned court erred in overruling plaintiff's offer to prove by William J. Suplee, that from about 1871 to 1873 he collected the rent for Heathcote of three properties at the corner of Sixtieth and Vine, and the two properties on Sixtieth street; that George Pearson occupied a house on the north

end of the lot on Sixtieth street and paid no rent, and that the witness did not collect the rent from the two houses on Vine street, originally built by Pearson.

4. The learned court erred in overruling plaintiff's offer to prove by Christopher Grimes that Heathcote said to him about 1876, that there was no use in his lavishing money on the property, that all he wanted out of the property was the money he had put into it. That on another occasion Mrs. Heathcote said in the presence of her husband, without contradiction by him, that the property in question did not belong to them but belonged to George Pearson. This was said on the suggestion of witness that they put water in the Vine Street houses.

5. The learned court erred in overruling plaintiff's offer to prove by Thomas Carr, that at Heathcote's instance, he took charge of all the properties in 1873, and collected rent from them, except one property at the north end of the lot, which was occupied by Pearson, and that witness was instructed by Heathcote not to demand any rent from Pearson.

6. The learned court erred in overruling plaintiff's offer to prove by Patrick McDonald, that he (the witness) made a bargain with Pearson and Heathcote to dig the wells and cellars for three houses on Vine street, and three on Sixtieth Street, and that Pearson paid him most of the money for the work, which amounted to about $700. That Heathcote paid him not more than once. That Heathcote said to him that he was advancing the money for George. That Pearson superintended the work, living at the time in one of the houses on Vine street. That after the cellars were dug, he made bricks from the clay that had been taken out of the cellars, and that Pearson paid witness a price for that work over and above what had been agreed upon between the witness Heathcote and Pearson, after the houses on Sixtieth street were finished. That the plaintiff, his son and his father worked with the witness in the evening, sometimes as late as twelve o'clock, in building the Sixtieth street houses. That the price paid by Pearson for the witness's work beyond what was stipulated for with Heathcote amounted to about $3.00 per week. That whilst the houses were being built, witness asked Heathcote for money on the occasion of the death of a child, but Heathcote said he couldn't give him any without an order from Pearson. That everything there was George's.

7. The learned court erred in overruling plaintiff's offer to prove by Mrs. Appleton, that about 1875 Heathcote said that when he was repaid his money, George (meaning the plaintiff) was entitled to have the property back; that he held the property as security for money advanced to George (meaning plaintiff).

8. The learned court erred in overruling plaintiff's offer to prove by Robert Pearson and Alfred Pearson that they heard Heathcote say, after making the deed in question and after the houses were built, that George (meaning the plaintiff) was entitled to the properties when Heathcote's money was repaid.

9. The learned court erred in overruling plaintiff's error to prove by Kate R. Wilson, that in 1875 she heard Heathcote say to his wife about this property that when he was repaid his money, George (the plaintiff) was entitled to have the property again.

10. The learned court erred in overruling plaintiff's offer to prove that about the year 1875, the plaintiff paid one James Sharkey for work done about these premises in filling up with ground.

11. The learned court erred in overruling plaintiff's offer to prove by Thomas Clegg, that in 1870 the said Clegg was indebted to the plaintiff and contracted with him and Heathcote to do painting on the three houses built in the fall of 1870 and spring of 1871 on the north end of the lot on Sixtieth street, that he finished his work in 1871, and that part of the price was paid by Clegg's indebtedness to plaintiff. That Heathcote said that he wished to finish the houses so that the rent should pay the bills; that they were advancing money for George Pearson, and were satisfied to take it out of the rents. That Heathcote often said to him that he was finishing the houses for George (the plaintiff) and would take his money out of the rent.

12. The learned court erred in overruling plaintiff's offer to show that out of the rents and profits all the money loaned has been repaid.

The court instructed the jury to find a verdict for the defendants. Verdict for the defendants and judgment thereon, whereupon the plaintiff took this writ and assigned for error the action of the court in directing a verdict for the defendant, and in overruling his offers of evidence as shown above.

*J. S. Freeman* (*Sharp & Alleman* with him) for plaintiff in error.—That a deed may be shown by parol testimony to be a mortgage has been decided so frequently that it has passed into an elementary principle, and no longer requires the citation of authorities to give it force, so that the only authorities necessary to establish the plaintiff's position, are those that indicate the character of proof required to change a deed into a mortgage.

In order to convert a deed, absolute on its face into a mortgage by parol evidence, such evidence must be clear, explicit unequivocal, and the parol defeasance must be shown to be

5 AMERMAN—17

contemporaneous with the deed. A deed absolute on its face may be shown to be in reality a mortgage not only by direct evidence, but also by facts and circumstances from which such a result may be inferred. The facts and circumstances must be clearly inconsistent with the deed being an absolute conveyance: Burger *v.* Dankel, 4 Out., 113; Plumer *v.* Guthrie, 26 P. F. S. 441.

A chancellor will not decree a deed absolute on its face to be a mortgage on proof of the *mere* verbal declaration of the parties, but facts and circumstances must be shown inconsistent with the idea of an absolute purchase.

. The existence of such facts may be shown by the admission of the grantor; but it is the facts, not the admissions, which raise the equity : Todd *v.* Campbell, 8 Casey, 250; Plumer *v.* Guthrie, 26 P. F. S. 441; Rhines *v.* Baird, 5 Wr., 256.

*Edwin S. Dixon* for defendant in error.—There is nothing this case to convert the deed of 1870, absolute on its face, prepared by able counsel under directions from both parties, into a mortgage; and in the language of Mr. Justice GORDON, in Lance's Appeal, 2 Amerman, 456, to convert a deed, absolute on its face into a mortgage by parol testimony, such testimony must be clear and specific, of a character such as will leave in the mind of a chancellor no hesitation or doubt, and failing this, the effort to impeach the legal character of the deed must be regarded as abortive. And this court will certainly not, except in a very clear case, disturb the findings of a chancellor who, as judge of law and facts, with everything before him, was not convinced that there was sufficient in the case to set aside the absolute deed.

Mr. Justice GORDON delivered the opinion of the court March 14th, 1887.

On the 7th of April 1870, the plaintiff, George Pearson, owned and occupied a lot of ground, situated at the north west corner of Vine and Sixtieth streets, in the city of Philadelphia. On this lot Pearson had previously erected two houses, in one of which he resided with his family, and at the time above mentioned he had commenced the erection on the same lot, of several other houses. At the date stated, he, the said Pearson, executed and delivered to Joseph F. Heathcote, whose executors are the principal defendants in this case, a deed in fee for the premises above described, which, on the trial of this case in the court below, was interposed as a complete defence to the plaintiff's action. To rebut this defence the plaintiff offered evidence to prove that this deed though absolute on its face was in fact but a security for money ad-

vanced by Heathcote to Pearson, and that he had been reim-
bursed by rents received from the property; but the court
below being of the opinion that, in this particular, the plain-
tiff had failed to establish what he proposed, directed a ver-
dict for the defendant.

We are not satisfied with the rectitude of the conclusion
thus adopted by the learned judge who tried this case. Whilst
we admit all that has been said in Plumer v. Guthrie, 76 Pa.
441 ; Burger v. Dankel, 100 Id., 113 and other similar cases, con-
cerning the character of the evidence that must be adduced in
order to establish a parol defeasance, yet we are not to ignore
the well established doctrine, supported not only by the cases
cited, but many others, that though a deed may on its face
appear to be indefeasable, an oral defeasance may by proper
proof be established. That is to say; the conveyance may be
shown to be a mere security for money advanced, or for the
performance of some definite obligation. We do not, indeed,
understand the doctrine here stated to be denied; on the other
hand, the rule being admitted, it is denied that the evidence
produced by the plaintiff is sufficient to bring his case within
the rule. We are, however, of a different opinion. A very
careful examination of the proofs and offers convince us that
the deed of the 7th of April 1870 was executed by Pearson to
Heathcote for the purpose of security only.

On this point two witnesses are especially clear; they are
Christian Kneass, the scrivener under whose supervision the
deed was prepared, and Annie E. Walls, a niece of the plain-
tiff. The first of these speaks positively of the deed as in-
tended by the parties as security for money advanced, by
Heathcote to Pearson. He says, when speaking of what oc-
curred at the time of the preparation of the conveyance, "from
what I can recollect of the interview, Mr. Heathcote said he
wanted a deed drawn for the property at Sixtieth and Oregon
(Vine) streets. He stated that Mr. Pearson was a drinking
man, and he did this because he wanted to protect Mr. Pear-
son. No money passed between them in my office at the time
the deed was executed. Mr. Heathcote had advanced Mr.
Pearson some money. He, Mr. Pearson, was indebted to Mr.
Heathcote. This deed was made for the purpose of protect-
ing Mr. Pearson ; it was also made because Mr. Heathcote
had advanced Mr. Pearson some money. The principal reason
was to secure himself, because Mr. Pearson's habits were
bad."

It will be observed from this testimony that the parties did
not intend a purchase and sale of the property, and that the
deed, according to the express declarations of Heathcote, was
intended as security for the money which he had advanced,

and it is further to be noted that no money was paid, no obligation given, no price fixed upon the property, nor was there anything else done which would have given the matter the appearance of a sale.

So far, then, as this testimony goes it is express and positive and leaves no room for doubt or hesitation, and had it gone one step farther, and revealed the fact that Heathcote was to reconvey on receipt of his advancements, no one could hesitate to pronounce the transaction a mortgage. But Annie E. Walls, the other witness whom we have mentioned, supplies what is wanting for the perfection of the plaintiff's case. She details with particularity the transactions which led to the making of the deed, and says, "it was finally agreed between Heathcote and Pearson that Pearson should deed this lot to Joseph F. Heathcote, as security for the money advanced and to be thereafter advanced for the purpose of erecting buildings on this lot, and when the amount loaned by Heathcote to Pearson was paid, with interest, Heathcote agreed to re-convey and re-deed this lot back to the plaintiff, Pearson; and if Pearson did not or could not pay Heathcote his money, with interest, at a favorable time the lot and buildings were to be sold, and the proceeds taken first to pay Heathcote the amount due him, and balance to go to and be paid to Pearson." She further testifies, that subsequently she frequently heard the parties say, in her presence, and in the presence of each other, that the property had been conveyed solely for the security of the grantee, and was to be reconveyed to Pearson as soon as Heathcote was paid.

If this witness is to be believed a parol defeasance is established, and were we to adopt the judgment of the court below we must in effect anticipate the operation of the Act of June 8th, 1881, which, when the deed in controversy was executed, was not yet enacted. But besides the evidence to which we have adverted, there were offers of testimony ruled out which, as corroborative of the preceding evidence, were relevant and important. These offers embraced the letter signed "Sister Mary"; the evidence of John W. Neilds, William Supplee, Christopher Grimes, Thomas Carr, Patrick McDonald, Mrs. Appleton, Robert Pearson, Alfred Pearson, Kate R. Wilson, James Sharkey, and Thomas Clegg. All these proposed to show the continued possession of Pearson, and the position of Heathcote as a mere mortgagee; all were designed to exhibit such circumstances, conditions and declarations as were inconsistent with the idea of absolute title in Heathcote.

It is urged, however, that from the testimony of Mrs. Walls it is obvious that Heathcote had, even by the oral arrangement, the power to sell; and hence, under the rule as stated in

[Davis *v.* Davis.]

the cases of Todd and Campbell, 8 Ca., 255, and Lance's Appeal 112 Pa. 456, the transaction can not be regarded as a mortgage, but rather as an oral trust, which the Act of 1856 avoids. But we cannot see the applicability of the cases cited to the facts developed in the present contention. In Todd & Campbell the facts were not sufficient to raise a trust of any kind, whilst in Lance's Appeal the evidence as well as all the circumstances showed clearly that it was not otherwise intended from the beginning, than that Bonnell, Lance's vendee, was to have the power to sell, not only for the purpose of paying the indebtedness of Lance to himself, but also in order to relieve the property from its liens. Here, on the other hand, there is nothing of the kind, for it is obvious that the parties being ignorant of the legal effect of their own arrangement, assumed that Heathcote possessed that power, though both were aware that when his advancements were paid his right in the property ceased. Moreover, it does not follow, that even had he possessed that power, it was not to be exercised only by way of foreclosure, and if so the parol defeasance would not be thereby affected. What we had said sustains all the exceptions of the plaintiff in error, and, as a consequence, we

Reverse the judgment of the court below and order a new venire.