MARY S. KRAAY ET AL. V. JOHN GIBSON, TREASURER.

1. Money not in the possession of the owner can not be taxed as "personal property," under that ·term as defined by Revised Statues, 2370, except when held by another as a *loan,* and the obligation to repay is secured by a mortgage or other conveyance, which, as between the parties, is regarded as a mortgage, *i. e.,* as security merely for the obligation to repay the loan. Conditional sales are not within the meaning of the definition, except such as by their terms could be, and by intention of the parties are in fact mortgages.

2. Parol evidence is admissible to show that a conveyance, absolute on its face, is, as between the parties, a mere security for a loan; but evidence to have such effect, must be clear, explicit, and unequivocal. Such evidence can be resorted to only where there is nothing in the conveyance to determine whether the transaction is a sale or a mortgage, and the nature of the transaction must be such as to be susceptible of either construction, in order that its real character can be so established. Where the provisions of the conveyance are inconsistent with the theory that a mortgage to secure an indebtedness was intended, it will be interpreted accordingly.

3. A privilege of repurchase, or a covenant for reconveyance, contained in a conveyance of real property, to be exercised at a *certain* time by the party in whose favor they exist, may, upon parol evidence of intention, be considered and treated in equity as defeasance provisions, and as characterizing the transaction as a mortgage. But this rule does not apply to a transaction involving a conveyance absolute on its face, with a perpetual lease back containing a privilege of purchase exercisable at the *unlimited* option of the lessee; hence, such transaction can not be treated as a mortgage by the taxing officers, and as

such taxed as "personal property," under Revised Statute, 2730.

4. The right of a tax-payer to enjoin the collection of taxes wrongfully assessed against him, can not be taken away by any action of a taxing officer or board; the amount fixed may be conclusive, but where the foundation of the right to tax is challenged, their action is *prima facie* only.

HOSEA, J.

Injunction.

Suit is to restrain the treasurer of Hamilton county from collecting certain taxes, placed upon the tax duplicate for collection, upon certain moneys invested in real estate in the county in behalf of the estate of Salina Cadwallader, deceased, by Morris M. White, as trustee.

The transactions being all of a substantially similar character, it will suffice here to say that in each instance there is a warranty deed, absolute on its face, with consideration fully stated, and a perpetual lease back to the grantor containing a privilege of purchase, at the lessee's option, at the consideration stated in the deed.

The auditor, upon statutory proceedings taken in consequence of information given him by agents employed to look up tax omissions, found and certified to the treasurer for collection the following additions to the tax returns made by Mr. White:

| YEAR. | AMOUNT ADDED. | TAX. |
|---|---|---|
| 1898 | $116,500 | $2,947 45 |
| 1899 | 123,500 | 3,178 89 |
| 1900 | 82,500 | 2,143 35 |
| 1901 | 32,500 | 806 65 |
| 1902 | 32,500 | 753 35 |
| 1903 | 27,500 | 624 25 |

The amounts so certified included tax upon certain bonds, which has since been paid, reducing the taxable amount added in 1898 by $17,000 and in 1899, by $14,000.

It appears that, by will, Mrs. Salina Cadwallader left a residue of her estate to said M. M. White in trust, to pay the income thereof to children until the youngest should at-

tain the age of thirty, and then to divide the principal between them, with power to invest, reinvest and make deeds of real estate. Mr. White also, subsequently, became trustee for the children.

As such trustee, Mr. White, as he in substance testifies, invested the money in his hands, in the several properties in question, for income, because his *cestuis que trustent* never wanted the principal. He claims to have made no loan, and to have taken no security, but that he bought the property for the purpose of creating the ground rents, and that the entire transaction and all conditions are fully shown in the recorded deeds and leases.

The testimony of the other parties to these transactions, taken before the auditor, was substantially the same. Mr. Holland, for example, testified that he wanted to raise money on the property and put it in the shape of a ground rent so he would never have to pay it back if he did not want to, but could buy the property back after a certain number of years if he wanted to. The other parties gave evidence substantially of the same tenor.

The determination of the issues here rests, primarily, upon the construction to be given to the tax law of Ohio, in this behalf. The interest in lands created by the transactions in question, is claimed by plaintiff to be taxable as "personal property," by virtue of the provision of R. S., 2730, reading as follows:

"The term, 'personal property,' shall be held to mean and include * * * the money loaned on pledge or mortgage of real estate, although a deed or other instrument may have been given for the same, if between the parties the same is considered as security merely."

The object of this definition is, undoubtedly, to bring within the purview of the tax laws that class of equitable mortgages created by acts of parties in the form of absolute conveyances, but with the purpose of pledging real property as security for the debt or obligation. It had long been held by courts of equity, that, whatever the form of the contract may be, if it is intended thereby to create a se-

curity for a debt or obligation, it is an equitable mortgage, and its quality is often implied from the nature of the transaction between the parties as against the written form. Jones, Mortgages, Par. 162.

But, in a sense, our statute, by the explicit character of its definition, imposes limitations, because it confines the inquiry to that which is the equivalent of a mortgage, *per se.*

In the first place, it must be money "loaned on pledge, or mortgage of real estate." A loan is defined as "that which is lent; anything furnished on condition of the future return of it, or of the delivery of an equivalent in kind; especially a sum of money lent at interest" (Century Dictionary). The legal definition embodies the more specific idea of a bailment or lending of something specifically to be returned at the determination of the bailment. Story, Bailments, Section 228.

The term "pledge" carries with it also the correlative idea of an obligation to return the thing lent. It is defined as a "bailment of personal property as a security for some debt or engagement" (Century Dictionary).

The meaning of the statute is therefore plain and unequivocal, as relating to money put out *as a loan* where real estate is pledged to secure its return, and, as between the parties, the same, although a deed in form is given, is considered by the parties as a security merely. Of course, any investment of money in land, in a very broad but not accurate sense, is a "security." A simple purchase of land may be for the specific purpose of security for the money, for land is generally regarded as the most secure form of money investment; yet the money is not taxed in such case as an investment upon a security. The word "merely," in connection with "security," emphasizes the explicitness of the meaning, as though its defining equivalents, "simply," "solely," "only" (Century Dictionary), had been used, and directs attention to the thing to be secured; namely, the obligation to pay back again.

It would seem therefore, as a necessary construction of the statute in question, that money not in possession of the owner can be taxed as personal property only when it is

held by another as a loan, and the obligation to repay is secured by mortgage or by a conveyance, that, as between the parties, is regarded as a mortgage in effect; *i. e.,* "as security merely," for the performance of the obligation to repay the loan. *Myers* v. *Seaberger,* 45 Ohio St., 232, 234.

The effect of the statute, in another aspect, is to legalize the established practice of courts of equity in permitting evidence of intention to prevail over the written contract in these cases; but it has been held, and wisely, that such evidence must be clear, explicit and unequivocal. *Brotherton* v. *Livingston,* 3 Watts & Serg., 334, 338; *Pearson* v. *Sharp,* 115 Pa. St., 254 (9 Atl. Rep., 38) ; *Wallace* v. *Johnstone,* 129 U. S., 58 (9 Sup. Ct. Rep., 243; 32 L. Ed., 619) ; *Carroll* v. *Tomlinson,* 192 Ill., 398 (61 N. E. Rep., 484; 85 Am. St. Rep., 344) ; *Bogk* v. *Gassert,* 149 U. S., 17 (13 Sup. Ct. Rep., 738; 37 L. Ed., 631) ; *Miller* v. *Stokely,* 5 Ohio St., 194, 195, 198; *Stall* v. *Cincinnati,* 16 Ohio St., 169, 170; *Mathews* v. *Leaman,* 24 Ohio St., 615, 624.

As was said in a well-considered opinion of the Supreme Court of Pennsylvania:

"Conceding that parol testimony may be admitted to show a deed absolute on its face to be a mortgage, yet the facts and circumstances relied on must not be of a doubtful import. It is not sufficient that they be merely consistent with the instrument being a mortgage; they must be clearly inconsistent with its being an absolute conveyance. Evidence less than this can not establish a parol defeasance. Titles regular and legal on their face can not be swept away by parol evidence of doubtful facts or ambiguous inferences." *Burger* v. *Dankel,* 100 Pa. St., 118.

In the case at bar, there was, in each instance, a deed absolute on its face, and a perpetual leasehold regranted to the vendor, with the privilege of purchase exercisable at his option. The question to be determined, is, whether the transactions thus represented, constituted—what they purport to be—conditional sales, or were, upon extraneous testimony as to the intent of parties, mortgages or securities merely, within the definition of our statute.

That a conditional sale is not a mortgage, is too well settled by authority to require comment; and it is a fair inference from the wording of our statute that the purpose of the explicit definition was to exclude conditional sales, except such as by their terms could be, and by intention of parties were in fact, mortgages.

It seems to be settled that parol testimony can be resorted to only where there is nothing on the face of the papers to determine whether the transaction is a conditional sale or a mortgage. Jones, Mortgages, Par. 277.

In other words, the nature of the transaction, as shown by the papers, must be such as to be susceptible of either construction, in order that its real character can be established by parol testimony; and it has been held that where the provisions of the contract are inconsistent with the idea that a mortgage to secure an indebtedness was intended, it will be interpreted accordingly. *Hanford* v. *Blessing*, 80 Ill., 188; *Smith* v. *Crosby*, 47 Wis., 160; *Hays* v. *Carr*, 83 Ind., 275; *Voss* v. *Eller*, 109 Ind., 260 (10 N. E. Rep., 74); *Yost* v. *Bank*, 66 Kan., 605 (72 Pac. Rep., 209; *Pumilia* v. *DeGeorge*, 74 S. W. Rep., 813 (Tex.).

The research into cases upon this subject leads into a labyrinth from which it is hard to emerge with a clear and satisfactory criterion by which the character of such transactions may be determined; and yet, after quite an extensive investigation of authorities, I am led back to the general view indicated above, in construing our own statute on the subject, as the true one.

In *Flagg* v. *Mann*, 2 Summ., 486 (9 Fed. Cas., 202), Justice Story lays down this rule:

"It has been said that the true test whether the conveyance in this case was a mortgage or not, is to ascertain whether it was a security for the payment of money or not. I agree to that, indeed, in all cases, the true test is to ascertain whether the conveyance is a security for the performance or non-performance of an act or thing."

So, in *Brant* v. *Robertson*, 16 Mo., 129, it is said:

"In determining whether the transaction was a conditional sale or a mortgage, the first fact to be ascertained is, whether the relation of debtor and creditor existed previous to, or was created at the time of, the conveyance. It may be taken as universally true in law, that no conveyance can be a mortgage, unless it is made for the purpose of securing the payment of a debt, or the performance of a duty, * * *. If payment of money is the object of the security or conveyance, then there must exist a duty to pay the money. * * * When the form of the instrument is not conclusive either way, resort must be had to the circumstances attending the transaction."

See also, *Goodman* v. *Grierson*, 2 Ball & B., 274, in which the Lord Chancellor applies the rule of mutuality of remedies, and says:

"Why am I, contrary to the express provisions of this ded, to hold it to be a mortgage, and to extend the condition beyond the limits agreed upon by the parties of the deed?"

That is to say: If, as a mortgagee, the vendor were to bring the property to a sale as under foreclosure, and it sold for less than the amount invested, he could have no remedy over for the residue, either upon covenant or the implied assumpsit. See, to same effect, *Bodwell* v. *Webster*, 30 Mass., 411.

In *Conway* v. *Alexander*, 11 U. S. (7 Cranch), 218 (3 L. Ed., 321), Chief Justice Marshall says:

"To deny the power of two individuals, capable of acting for themselves, to make a contract for the purchase and sale of lands defeasible by the payment of money at a future day, or, in other words, to make a sale with a reservation to the vendor of a right to repurchase the same land at a fixed price and at a specified time, would be to transfer to the court of chancery, in a considerable degree, the guardianship of adults as well as infants. Such contracts are certainly not prohibited either by the letter or policy of the law. * * * As a conditional sale, if really intended,

is valid, the inquiry in every case must be, whether the contract in the specific case is a security for the repayment of money or an actual sale."

In two comparatively late cases, the Supreme Court of the United States has substantially reaffirmed these doctrines.

In *Wallace* v. *Johnstone,* 129 U. S., 58 (9 Sup. Ct. Rep., 243; 32 L. Ed., 619), it is held that a transaction similar to that at bar, but where a time is fixed for the repurchase, will not be held a mortgage unless it is clearly shown either by parol evidence or the attendant circumstances to have been intended by the parties as security for a loan or an existent debt.  *Cadman* v. *Peter,* 118 U. S., 73 80 (6 Sup. Ct. Rep., 957; 30 L. Ed., 78) ; *Coyle* v. *Davis,* 116 U. S., 108 (6 Sup. Ct. Rep., 314; 29 L. Ed., 583) ; *Howland* v. *Blake,* 97 U. S., 624 (24 L. Ed., 1027) ; *Horbach* v. *Hill,* 112 U. S., 144 (5 Sup. Ct. Rep., 81; 28 L. Ed., 670).

The case of *Bogk* v. *Gassert,* 149 U. S., 17 (13 Sup. Ct. Rep., 738; 37 L. Ed., 631), presented as strong a case upon the facts as could well arise.  There was a deed, and a time lease back, with privilege of repurchase in a given time. The privilege not having been exercised suit was brought to dispossess the tenant and a plea of title was interposed by Bogk, who introduced testimony showing that the transaction was intended as a mortgage; that plaintiff never had possession; that the negotiations were for a loan for the purpose of raising money to pay off mortgages, judgments, liens, etc., on the property; and showing also that the consideration and repurchase price was the amount loaned ($15,000) with the interest compounded monthly for the term of the lease (aggregating $17,935), and that the real value of the property was $40,000 to $50,000.  The court says of it, in conclusion, page 30 :

"All his evidence amounts to is that he wanted a loan of money, and that plaintiff insisted on a deed and an agreement to convey, instead of a mortgage.  But defendant did not claim to have been imposed upon, deceived, or de-

frauded, and he had no right to a request (as to a charge) based upon this hypothesis."

A careful review of a large number of cases from many states seems fairly to establish the principle that where the transaction involves a privilege of purchase or bond for reconveyance to be availed of at a certain time, such may be, upon parol testimony of intention, considered and treated in equity as defeasance and give character to the transaction as a mortgage, and the equity of redemption may be enforced. But nowhere have I found an authority for such a holding upon a perpetual lease with privilege of purchase at lessee's option, unlimited in time.

The decided weight of authority is to the effect, tersely expressed in a recent case by the supreme court of Illinois: "A mortgage is a security for a debt or obligation and an incident thereto, and it is therefore held that a debt or obligation of some kind is an essential element in a mortgage," and because the bond in the case merely provided, that, if the plaintiff should pay a certain sum with interest and taxes, a reconveyance should be made, yet, because the bond created no liability enforceable at law and no debt or obligation to repay, the transaction was held to be a sale and not a mortgage. *Carroll* v. *Tomlinson,* 192 Ill., 398, 401 (61 N. E. Rep. 484; 85 Am. St. Rep., 344) ; *Bacon* v. *Bank,* 191 Ill., 205 (60 N. E. Rep., 846) ; *Burgett* v. *Osborne,* 172 Ill., 227 (50 N. E. Rep., 206).

The Ohio cases on this subject are of the same general character as those from other jurisdictions cited.

In *Miami Exporting Co.* v. *Bank,* Wright, 249, 252, the privilege of purchase was limited in time. The same conditions appear in *Marshall* v. *Stewart,* 17 Ohio, 356; in *Cotterell* v. *Long,* 20 Ohio, 464; in *Wilson* v. *Giddings,* 28 Ohio St., 554; and in *Patrick* v. *Littell,* 36 Ohio St., 79. In all these cases the circumstances left no doubt of the character of the transactions as being, and as intended to be, mortgages in fact.

But there are cases much more to the point. Thus, in *Miller* v. *Stokely,* 5 Ohio St., 194, 195, 198, a bill to estab-

lish a trust in the nature of a mortgage upon a deed absolute was dismissed upon the holding that proof such as to excite suspicion or even probability is not sufficient; and that proof in such cases must be "affirmative and so conclusive as to remove all reasonable and well founded doubts."

In *Slutz* v. *Desenberg,* 28 Ohio St., 371, 372, there was a contract to reconvey upon payment at a specified time; yet the circuit court is reversed, and the transaction held to be a sale and not a mortgage, upon a very full discussion, part of which is as follows, page 376:

"A mortgage, when in form a deed absolute, and a conditional sale are frequently so nearly allied to each other that it is sometimes difficult to say whether a particular transaction is the one or the other.

"The distinctive difference, however, appears to be this: The former is a security for a debt; the latter a purchase of land * * * accompanied by an agreement to resell at a given time for a given price."

The court cites *Goodman* v. *Grierson, supra,* with approval and quotes the principle that, "where no such liability"—that is, the remedy over against the grantor for deficiency—"accompanies the transaction, the deed covers a sale and not a mortgage."

The court also cites with approval the case of *Conway* v. *Alexander, supra,* and declares that the American rule is in harmony with the English rule on the subject, and further cites with approval the rule in *Robinson* v. *Cropsey,* 2 Edw. Ch., 138 Ch., 138, 144, as follows:

Where "the money advanced is not paid by way of loan so as to constitute a debt and liability to repay it, but, by the terms of the agreement, the grantor has the privilege of refunding or not at his election, then it must be deemed purchase money and the transaction will be a sale upon condition." This case establishes the rule in Ohio as applicable to the case at bar.

*Kemper* v. *Campbell,* 44 Ohio St., 210, 214, was a cred-

itor's suit in which the right to claim a deed absolute to be a mortgage in fact, is held to be recognizable in equity only for the purpose of preventing imposition and injustice, and as a remedial right of·redemption merely, and not of foreclosure.

The court holds, page 215, that, "There is a marked difference between an absolute deed held to be a mortgage and a deed that is intended to be, and is, a mortgage upon the face of it." Again the court says, page 219:

"The absence of a promise to pay and of a provision in the deed that upon payment the conveyance shall be·void, marks the distinction between a proper mortgage and an absolute conveyance, with.a right reserved to the grantor to claim a reconveyance upon the payment of money."

The cases cited complete the list of decisions of our Supreme Court that bear directly upon the subject, excepting, possibly, *Stratton* v. *Sabin,* 9 Ohio, 28 (34 Am. Dec., 418), to which reference will be made later.

*McCammon* v. *Cooper,* 69 Ohio St., 366, seems to still further emphasize the difference between a mortgage and a conditional sale transaction—the one bringing into existence an intangible subject of taxation called a "credit," the other producing a "ground rent," which the court classes as real estate. Indirectly, therefore, this case may be said to affirm *Slutz* v. *Desenberg, supra,* by showing, inferentially, that only the intermediate transactions involving a *time lease* are capable of equitable transformation according to intent of parties.

. In view of the principles established by the authorities cited, which are selected from many because of the clear statement of principle, *Slutz* v. *Desenberg, supra,* is decisive of this case.

In this connection it is not without significance that no case upon a perpetual leasehold with privilege of purchase at the unlimited option of the lessee has ever reached the Supreme Court of this state, and that no such.case appears among the large number of others examined in the preparation of this opinion. This fact can only mean that the principle is regarded by the bar generally as beyond

question. [I have not overlooked the case of *Coleman* v. *Miller*, 8 Dec. Re., 179 (6 Bull., 199), decided by our old District court in 1881; but, for aught that appears in the text of the decision, the lease in question may be a time lease. Moreover, the facts found show, that both parties, at the date of the transaction, distinctly regarded it as a mere loan upon security of the land. In view of the late utterances of our own Supreme Court, courts of other states and of the Supreme Court of the United States, I can not. accept it as an authority for the purposes of this case.]

The case at bar, in other words, does not fall within the debatable class, as to which extrinsic testimony is admissible. Its character is fixed by its own terms. Jones, Mortgages, Section 261; *Stratton* v. *Sabin,* 9 Ohio, 28, 31 (34 Am. Dec., 418), in which case the court cite with approval the following holding in the case of *Glover* v. *Payne,* 19 Wend., 518:

"The mere fact of a conveyance of land, and an agreement for a reconveyance at a future day, at an advanced price, at the election of the grantor, afforded no evidence of an intention that the deed should be a mortgage, though the question might have arisen, had the deed been given for a pre-existing debt, or on a loan of money, or had the grantor entered into an obligation to repay the consideration money expressed in the deed."

The case, *Glover* v. *Payn, supra,* page 521, is a well-considered authority in support of the proposition that, "where there is no debt and no loan, * * * an agreement to resell will not change an absolute conveyance into a mortgage." See also, *Kunkle* v. *Wolfersberger,* 6 Watts, 126.

It may be frankly admitted that there was on one side in the transactions under consideration, money seeking investment, and on the other, a necessity for the use of money. Yet it was quite within the right of parties to agree upon such terms as they might choose, whereby one should give and the other receive. There was, in effect, an exchange of the land for the money, coupled with a right or option in the grantor to change back again if he should desire, or not

to do so if he should not see fit. Certainly there was no obligation created, and both parties fully understood and acquiesced in these terms. Should the land depreciate in value, the loss would fall upon the vendee, who had no means of enforcing any claim against the vendor, for he had given his money upon an exchange which created neither debt nor obligation on which a claim could be based. The few chance expressions that might seem inconsistent, elicited from the parties, many years after the events, by an adroit and aggressive cross-examination—expressions used in a loose, popular and inaccurate sense—do not change the essential weight of the testimony as a whole. The answer to the claims of counsel in this behalf is found, by analogy, in *Bank* v. *Slemmons,* 34 Ohio St., 142.

"If a payee take from the maker a promissory note, and at the same time surrender the maker's note of an earlier date given for a loan of money, the facts, and not merely what the payee called or considered the transaction, will determine whether it was a renewal or payment of the original loan."

Such proof, even if it might raise a suspicion, like the coincidence of the amount of rent with a given interest on the sums paid, can not convert into a mortgage a transaction which on its face bears no such suggestion, much less one that by its inherent nature in law is not convertible. Indeed, taking all possible extrinsic facts into view, they do not present so strong a case as *Bogk* v. *Gassert, supra,* which the Supreme Court of the United States, upon a full citation of authorities, declared to be a sale, and not a mortgage, even in the face of inadequacy of consideration, and a time limit upon the privilege of repurchase.

If the conclusions reached are correct, it also disposes of the claim arising from the increase or decrease of rentals and partial payments of purchase money in certain of the cases, for I apprehend that the familiar principle of equity, "once a mortgage, always a mortgage," would apply to a conditional sale (Jones, Mortgages, Sections 263, 269). It is true that parties may, by subsequent agreement so to do,

completely change the character of the transactions; but if the transactions in this case were conditional sales, it is because they lacked the vital elements of a mortgage at their inception and consequently no change in details, short of supplying the missing links, so to speak, could change their legal character.

The statements of the text-books summarizing the authorities on this subject are not always accurate, as will appear from the citation by counsel from 1 Cooley, Taxation, to the precise point under discussion. The citation is the broad statement from the third edition on page 768, as follows:

"Where, however, under the revenue laws land is taxable and also a mortgage upon it, if one from whom money is obtained, instead of taking a mortgage for the amount, takes an absolute conveyance and gives back a lease with a stipulation to sell back the land on repayment of the money and interest,—the whole transaction being obviously only a loan and the taking of security therefor,—the land may still be taxed to the borrower and the lender taxed as mortgagee," citing *Waller* v. *Jaeger,* 39 Iowa, 228; *Lappin* v. *Nemaha Co.,* 6 Kan., 403; *Patrick* v. *Littell,* 36 Ohio St., 79.

But, the cases cited by Judge Cooley—and they can be hardly considered as leading cases on the subject—were obvious cases upon their facts, and in each there was a privilege of purchase within a specified period. If the terms of this statement, "repayment of the money and interest," be taken literally, it converts the broad statement into a limited one, and, in view of the expression, "instead of a mortgage," which immediately precedes, this is probably what is meant, viz., a loan of money to be repaid at a specified time with interest.

That this is what is meant, and no more, is fairly to be inferred; because, a little earlier in the same connection, he declares that the intention of the party, even were his purpose to avoid taxation, is not in all cases the governing factor, citing as instances, investments in government securities, and the change of personalty into real estate with

a lease for years back, in order to avoid taxation. He says of these:

"In each of these cases the party is only exercising a right which the law allows to him."

The case of *Hess* v. *Muir*, 65 Md., 586 (5 Atl. Rep., 540; 6 Atl. Rep., 673), cited as a "bottle case," will be found to turn upon a wholly different point; namely, that of a fraudulent attempt to covery usury, which vitiates a contract under the law. But even here, the court says *passim:*

"It is plainly shown that the money was obtained as a loan and that the deed and lease were but means of security for the amount agreed to be repaid."

With reference to the legal effect of the action and finding of the auditor in these cases, it may be remarked, briefly, that where the amount, only, is in question, it may be conclusive, but where the foundation of the right to tax is challenged, the action of the auditor is *prima facie,* only.

Full jurisdiction exists in this court. It is unquestionable that the right of the tax-payer to enjoin collection can not be taken away by any action of a taxing officer or board. *Gager* v. *Prout,* 48 Ohio St., 89; *Hagerty* v. *Huddleston,* 60 Ohio St., 149, 165, 167; *Musser* v. *Adair,* 55 Ohio St., 466, 471.

The injunction prayed for should be granted, and it is so ordered. Judgment for plaintiff, and perpetual injunction ordered.

*C. B. Wilby,* for plaintiff.
*A. B. Benedict,* for defendant.