## WALLACE *v.* JOHNSTONE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF IOWA.

No. 94. Argued November 23, 1888. — Decided January 14, 1889.

A deed of lands, absolute in form, with general warranty of title, and an agreement by the vendee to reconvey the property to the vendor, or to a third person, upon his payment of a fixed sum within a specified time, do not of themselves constitute a mortgage; nor will they be held to operate as a mortgage unless it is clearly shown, either by parol evidence or by the attendant circumstances, such as the condition and relation of the parties, or gross inadequacy of price, to have been intended by the parties as a security for a loan or an existing debt.

The fact of a collateral agreement by the grantee in a deed of real estate to reconvey to the grantor on the payment of a sum of money at a future day is not inconsistent with the idea of a sale.

Whether the transaction in dispute was a sale or a mortgage is a question of fact, to be determined from the proof, and here the proof shows it to have been a sale.

THE case is stated in the opinion of the court.

*Mr. George Norris* for appellant cited: *Teal* v. *Walker*, 111 U. S. 242; *Nugent* v. *Riley*, 1 Met. 117; *S. C.* 35 Am. Dec. 355; *Wilson* v. *Shoenberger*, 31 Penn. St. 295; *Dow* v. *Chamberlin*, 5 McLean, 281; *Bayley* v. *Bailey*, 5 Gray, 505; *Lane* v. *Shears*, 1 Wend. 433; *Friedley* v. *Hamilton*, 17 S. & R. 70; *S. C.* 17 Am. Dec. 638; *Shaw* v. *Erskine*, 43 Maine, 371; *Peugh* v. *Davis*, 96 U. S. 332; *Russell* v. *Southard*, 12 How. 139; *Shillaber* v. *Robinson*, 97 U. S. 68; *Conway* v. *Alexander*, 7 Cranch, 218; *Morris* v. *Nixon*, 1 How. 126; *Vernon* v. *Bethell*, 2 Eden, 110; *Oldham* v. *Halley*, 2 J. J. Marsh. 113; *Edrington* v. *Harper*, 3 J. J. Marsh. 353; *S. C.* 20 Am. Dec. 145.

*Mr. James Hagerman*, with whom was *Mr. Joseph G. Anderson* for appellees, cited: *Conway* v. *Alexander*, 7 Cranch, 218; *Snavely* v. *Pickle*, 29 Gratt. 27; *Slutz* v. *Desenburg*, 28 Ohio St. 371; *Flagg* v. *Mann*, 14 Pick. 467; *Glover* v. *Payn*, 19 Wend. 518; *Slowey* v. *McMurray*, 27 Missouri, 113; *S. C.* 72 Am. Dec. 251; *Galt* v. *Jackson*, 9 Georgia, 151;

*Spence* v. *Steadman*, 49 Georgia, 133; *West* v. *Hendrix*, 28 Alabama, 226; *Ruffier* v. *Womack*, 30 Texas, 332; *Pitts* v. *Cable*, 44 Illinois, 103; *Magnusson* v. *Johnson*, 73 Illinois, 156; *Hicks* v. *Hicks*, 5 Gill & Johns. 75; *McNamara* v. *Culver*, 22 Kansas, 661; *Budd* v. *Van Orden*, 33 N. J. Eq. 143; *Shaw* v. *Erskine*, 43 Maine, 371; *Treat* v. *Strickland*, 23 Maine, 234; *Hill* v. *Grant*, 46 N. Y. 496; *Penn. Co.* v. *Austin*, 42 Penn. St. 257; *Stevenson* v. *Thompson*, 13 Illinois, 186; *Carr* v. *Rising*, 62 Illinois, 14; *Saxton* v. *Hitchcock*, 47 Barb. 220; *Howland* v. *Blake*, 97 U. S. 624; *Coyle* v. *Davis*, 116 U. S. 108; *Cadman* v. *Peter*, 118 U. S. 73; *Corbit* v. *Smith*, 7 Iowa, 60; *S. C.* 71 Am. Dec. 431; *Cooper* v. *Skeel*, 14 Iowa, 578; *Gardner* v. *Weston*, 18 Iowa, 533; *Hyatt* v. *Cochran*, 37 Iowa, 309; *Sinclair* v. *Walker*, 38 Iowa, 575; *Zuver* v. *Lyons*, 40 Iowa, 510; *Woodworth* v. *Carman*, 43 Iowa, 504; *Kibby* v. *Harsh*, 61 Iowa, 196; *Knight* v. *McCord*, 63 Iowa, 429.

Mr. Justice Lamar delivered the opinion of the court.

This is a suit in equity originally brought in a state court by the appellees against the appellant and one E. R. Ford, to quiet the title to about 3184 acres of land in Sioux and Clay counties in the State of Iowa.

The petition alleged that on February 17, 1875, the defendant, John A. Wallace, who was then the owner in fee of the land in dispute, by a deed of warranty, which was afterwards duly recorded, for a valuable consideration, sold and conveyed the same to the plaintiffs and one William Leighton; that on the same day said grantees executed and delivered to the defendant Ford a contract in writing, giving him the option, for the period of sixty days from that date, of purchasing the land in question, upon the payment by him of the sum of $5876, which contract was on that day assigned by Ford to defendant Wallace, and was afterwards duly recorded; that Leighton afterwards conveyed his undivided one-fourth interest to the plaintiff C. F. Davis, who afterwards conveyed one-half thereof to plaintiff Edward Johnstone; that neither of the defendants ever paid anything on the lands, and neither ever

exercised the option of purchasing within the time specified in the option contract, or at any time thereafter, and that the rights of the defendants under that contract had become forfeited; that the plaintiffs, upon the purchase of the lands, assumed control of them, and had paid the taxes thereon; and that the defendants had no rights under the contract, nor any interest, legal or equitable, in the lands, but the contract, being upon the records of the counties where the lands lie, constituted a cloud upon the title to them.

The prayer of the petition was, that the option contract be declared forfeited, rescinded and cancelled, and the title to the plaintiffs be quieted against all claims of the defendants, or either of them, and for further relief, etc.

Defendant Wallace answered, admitting the execution and delivery of the deed and option contract of February 17, 1875, but alleging that, taken together, they were understood by the parties thereto as constituting a mortgage for the security of the money received by him at that time, which was in reality a loan; alleging, further, that the transaction was to avoid the effect of the usury laws of Iowa, the plaintiffs not being willing to accept simply the legal rate of ten per cent interest on such loan; that the lands were worth at that time fully $20,000, and the money actually received by him was only about $4250; that defendant Ford never had any real interest in the option contract, but actually assigned it to him before it was signed and executed by the plaintiffs and Leighton, all of which was well known to said parties; that the loan was obtained in good faith, and he was willing to bind himself, in the way he did, for said $5876, for the use of the said $4250 for sixty days, because he badly needed money, and believed he could sell the land so as to pay off the loan and leave a large surplus for himself; and that this defendant has considered himself indebted to plaintiffs and Leighton in the sum of $4250, and lawful interest from February 17, 1875, and now asks that he be required to pay only that amount.

He, therefore, prayed that said deed be declared by the court to be a mortgage; that the title to the real estate be decreed to be in the defendant, subject to such claim as the

plaintiffs may legitimately have against it by virtue of that deed, and any taxes they have paid; and that defendant have a legal right to redeem, as provided by law, upon such terms of payment of such amount as the court shall think just and proper, and for other and further relief, etc.

The suit was then removed into the United States Circuit Court for the Southern District of Iowa, upon the ground of diverse citizenship of the parties, where defendant Wallace filed a cross-bill substantially in matter and form the same as his answer, asking to redeem. Plaintiffs replied to the answer of Wallace, and answered his cross-bill denying every material allegation therein not in harmony with the allegations of the petition. Defendant Ford answered, admitting all the allegations of plaintiffs' petition, and disclaiming any interest in the lands. Testimony was taken, and the decree of the Circuit Court was in favor of the plaintiffs; the option contract was cancelled and annulled; the title to the lands in question was quieted in the plaintiffs forever as against any claim thereto on the part of either of the defendants or any one claiming under them through the option contract; and the cross-bill of defendant Wallace was dismissed. From this decree Wallace prayed and perfected an appeal, which brings the case into this court.

The sole question presented in the case is — was the transaction of February 17, 1875, an absolute sale or a mortgage? If this question could be determined by inspection of the written papers alone, the transaction was clearly not a mortgage, but an absolute sale and deed, accompanied by an independent contract between the vendee and a third person, not a party to the sale, to convey the lands to him upon his payment of a fixed sum within a certain time. Upon their face there are none of the *indicia* by which courts are led to construe such instruments to be intended as a mortgage or security for a loan; nothing from which there can be inferred the existence of a debt, or the relation of borrower and lender between the parties to the deeds or between the parties to the contract.

The question whether the extrinsic proof shows that the

$4250 was a loan to Wallace, and that the deed and option contract were made to secure its repayment with large interest, is a question of fact to be determined by the circumstances attending the execution of the instruments in question.

The evidence, as it appears in the record, is much less contradictory than is usual in such cases where it is sought by parol testimony to change an absolute conveyance, with a collateral agreement for a repurchase, into a mortgage.

With the single exception of the appellant, all the witnesses conversant with the negotiations between the parties unite in giving testimony tending to show that the transaction was a purchase of the lands by the appellees for the purpose of acquiring the property, and that they made a collateral agreement with Ford that if he, or his assigns, should, within sixty days, deposit in bank to their credit the sum of $5876, they would convey the lands to them.

It is not necessary to discuss the testimony in detail. There are two points, however, to which we will make reference. Edward Johnstone, one of the appellees, after giving the particulars of the contract, as expressed in the papers, says:

"Upon the purchase of these lands we went into possession of them, and we paid taxes for them, and sold a portion; and I never heard anything of any claim of Mr. Wallace of this being a loan, until I saw it set up in his answer to this case.

. . . . I never heard from Dr. Ford or Mr. Wallace that he wanted a loan; there was never such a thing as a loan intimated.

"Did you ever hear Mr. Leighton say anything on the subject?

"I talked frequently to Mr. Leighton and Mr. Davis and Mr. Connable, and I never heard a word said that would intimate that a loan was desired by Mr. Wallace; it was all with reference to the purchase of these lands."

Both Davis and Connable testify to the same effect. Each denies, positively, that a loan was proposed, or a debt incurred, or a mortgage at any time contemplated. These statements are strongly corroborated by the other witnesses, and are not contradicted even by the appellant.

E. R. Ford, the agent of Wallace, who initiated negotiations between the parties, and who was present at the execution and delivery of the papers, the option contract being made with him, being called as a witness for the appellant, testified: "That the deed and option contract expressed the whole transaction. .. . . I didn't so understand it as a loan." In response to the question, "In your negotiation you did not understand it in that light as a loan?" he answered: "I did not. From the beginning, in St. Louis I think it was, my own suggestion as to this option of repurchase, knowing that a mortgage or deed of trust would not be accepted for a short loan, as no loan was contemplated, the subject-matter of a loan was left out of the question altogether." And he proceeds afterwards to state, in reference to his suggestion to Mr. Wallace, that he should make a sale and take back the contract of repurchase within a stipulated time and for a stipulated price, that it was the only method he thought of, believing, as he did, "that a sale might be effected, but that a short loan could not be made upon unimproved lands; hence I am quite positive that the subject of loans was not entertained at all." He also states: "That the question of interest was never discussed between the parties, and that whatever compensation the purchasers would consider in the matter would be in the nature of a profit of the land in selling."

W. B. Collins, who was the attorney for the appellees, states that the appellant, his agent, Ford, and Leighton, one of the purchasers, frequently met at his office and conversed about the pending negotiations for the sale of the land; that they always spoke of it as a sale and purchase, and that he did not hear at any time of its being a loan.

There is but one witness, the appellant Wallace, who testifies that the transaction was a loan. His statements as to any particular fact are singularly indefinite, inconsistent, and unsatisfactory. His testimony consists, largely, of his version of certain conversations and arrangements with Leighton, who died before the commencement of the suit.

These arrangements looking to the loan and mortgage he expected, as he alleges, to be carried out by the appellees; but

he admits, after many indirect answers, that he does not remember any conversations with the appellees, or any one of them, in which the transaction was spoken of by himself, or by them, as a loan, or in which the subject of interest was mentioned between them ; or in his own language, "it is more than likely that I did not have such conversation." If there was no other testimony in the case than that of the appellant, we do not think the proof sufficient to overcome the effect due to the clear and distinct terms of the written instruments.

But it is urged by appellant's counsel that the disparity between the price paid for the lands and their actual value shows the. transaction to be a loan, and not a purchase. The evidence on this subject is at first view contradictory ; some of the witnesses putting a market value per acre of such lands in large lots at the price paid for them by the appellees; others stating their value to be from $2.50 to $3.00 per acre. The real fact, taking all the testimony together, seems to be that those lands, when sold in small areas to actual settlers for the purposes of habitation, would bring the higher prices, whilst in large quantities they could be sold to speculators, for profit, only at the lower prices.

Nothing presented by the assignment of errors calls for correction. The legal questions which they raise have been settled beyond doubt or controversy by repeated decisions of this court.

A deed of lands, absolute in form with general warranty of title, and an agreement by the vendee to reconvey the property to the vendor or a third person, upon his payment of a fixed sum within a specified time, do not of themselves constitute a mortgage; nor will they be held to operate as a mortgage, unless it is clearly shown, either by parol evidence or by the attendant circumstances, such as the condition and relation of the parties, or gross inadequacy of price, to have been intended by the parties as a security for a loan or an existing debt. *Cadman* v. *Peter*, 118 U. S. 73, 80 ; *Coyle* v. *Davis*, 116 U. S. 108 ; *Howland* v. *Blake*, 97 U. S. 624 ; *Horbach* v. *Hill*, 112 U. S. 144.

The fact of such a collateral agreement to reconvey is not inconsistent with the idea of a sale.

When the time fixed for the payment elapsed, Wallace's right to repurchase became extinct, and appellees held the lands discharged from any claim upon his part.

The decree of the court below is

*Affirmed.*