The transactions being all of a substantially similar character,\ it will suffice here to say that in each instance there is a war- and a perpetual lease back to the grantor, containing a privil ege of purchase at the lessee’s option at the consideration statec in the deed. ( ranty deed, absolute on its face, with consideration fuly stated in deed.
The auditor, upon statutory proceedings taken in consequence of information given him by agents employed to look up tax *538 ■omissions, found and certified to the treasurer for collection the .following additions to the tax returns made by Mr. White:
Year. Am’t added. Tax.
1898 ............ $116,500 $2,947.45.
1899 ...........'. 123,500 ............. 3,178.89.
1900 ............ ■ 82,500 ............. 2,143.35.
1901 ............ 32,500 806.65.
1902 ............ 32,500 753.35.
1903 ............ 27,500 624.25.
The amount so certified included tax upon certain bonds which lave since been paid, reducing the taxable amount added in .1898 by $17,000, and in 1899 by $14,000.
It appears that by will, Mrs. Selina Cadwallader left a residue of her estate to said M. M. White in trust, to pay the income thereof to children until the youngest should attain the age of thirty, and then to divide the principal between them, with power to invest and re-invest and make deeds of real estate. Mr. White also subsequently became trustee for the children.
As such trustee, Mr. White, as he, in substance, testifies, in-vested the money in his' hands in the several properties in question for income, because his cestuis que trustent never wanted the principal; he claims to have made no loan, and to have taken no security; but that he bought the property for the purpose of creating the ground rent, and that the entire transactions and all conditions are fully shown in the recorded deeds and leases.
The testimony of the other parties to these transactions taken before the auditor, was substantially the same — Mr. Holland, for example, testified that he wanted to raise money on the property and put it in the shape of a ground rent so he would never have to pay it back if he did not want to, but could buy it (the property) back after a certain number of years if. he wanted to. The other parties gave evidence substantially of the same tenor.
The determination of the issue here rests, primarily, upon the ocnstruction to be given to the tax law of Ohio, in this behalf. The interest in lands created by the transaction in question, is claimed by plaintiff to be taxable as "“personal property,” by *539 virtue of the provisions of Revised Statutes, Section 2730, reading as follows:
“The terms ‘personal property,’ shall be held to mean and include * * * the money loaned on pledge or mortgage on real estate, although a deed or other instrument may have been given for the same, if, between the parties, the same is considered as security merely.”
The object of this definition is, undoubtedly, to bring within the purview of the tax laws that class of equitable mortgages created by acts of parties in the form of -absolute conveyances, but with the purpose of pledging real property as security for the debt or obligation. It had long been held by courts of equity that, whatever the form of the contract may be, if it is intended thereby to create a surety for a debt or obligation, it is an equitable mortgage, and its quality is often implied from the nature of the transaction between the parties as against the written form (Jones on Mortgages, Par. 162).
But, in a sense, our statute, by the explicit character of its definition, imposes limitations because it confines the inquiry to that which is the equivalent of a mortgage per se.
In the first place, it must be money “loaned on pledge, or mortgage of real estate.” A loan is defined as “that which is lent; anything furnished on condition of the future return of it, or of the delivery of an equivalent in kind, especially a sum of money lent at interest” (Cent. Diet.). The legal definition embodies the more specific idea of a bailment or lending of something' specifically to be returned at the determination of the bailment (Story on Bailments, Section 228).
The term “pledge” carries with it also the correlative idea of an obligation to return the thing lent. It is defined as a “bailment of personal property as a security for some debt or engagement” (Century Dictionary).
The meaning of the statute is therefore plain and unequivocal, as relating to money put out as a loan where real estate is pledged to secure its return, and, as between the parties, the same, although a deed in form is given, is considered by the parties as security merely. Of course, any investment of money in land, in a very broad but not accurate sense, is a “security.” *540 A simple purchase of land may be for the specific purpose of security for the money — for land is generally regarded as the most secure form of money-investment; yet the money is not taxed in such case as an investment. The word “merely,” in connection with “security,” emphasizes the explicitness of the meaning — as though its defining equivalents “simply,” “solely,” “only” (Cent. Diet.), had been used, and directs attention to the thing to be secured, namely, the obligation to pay back again.
It would seem theyefore, as a necessary construction of the statute in question, that money not in possession of the owner can be taxed as personal property only when it is held by another as a loan, and- the obligation to repay is secured by-mortgage or by conveyance, that, as between the parties, is regarded as a mortgage in effect, i. e., “as security merely,” for the performance of the obligation to repay the loan. Myers v. Seaberger, 45 O. St., 232 (234).
The effect of the statute, in another aspect, is to legalize the established practice of courts of equity in permitting evidence of intention to prevail over the written contract in these cases; but it has been held, and wisely, that such evidence must be clear, explicit and unequivocal. 3 W. and S., 338; 115 Penn., 254; 129 U. S., 58; 192 Ills., 398, Carroll v. Tomlinson; 149 U. S., 17, Bogk v. Gassert; 5 O. St., 195 (198), Miller v. Stokely; 16 O. St., 170; Stall v. Cincinnati; 24 O. St., 615 (624), Matthews v. Leaman.
As was said in a well-considered opinion of the Supreme Court of Pennsylvania:
“Conceding that parol testimony may be admitted to show a deed absolute on its face to be a mortgage, yet the facts and circumstances relied on must not be of a doubtful import. It is not sufficient that they be merely consistent with the instrument being a mortgage, they must be clearly inconsistent with its being an absolute conveyance. Evidence less than this can not establish a parol defeasance. Titles regular and legal on their face can not be swept away by parol evidence of doubtful facts or ambiguous inferences.” Burger v. Dankel, 100 Penn. St., 118.
*541 In the ease at bar, there was, in each instance, a deed absolute on its face, and a perpetual leasehold regranted to the vendor, I with privilege of purchase exercisable at his option. The ques- J tion to be determined is: Whether the transactions thus represented, constituted — what they purport to be — conditional sales, / or were, upon extraneous testimony as to the intent of parties, j' mortgages or securities merely, within the definition of ourJ statute ?
That a conditional sale is not a mortgage, is too well settled by authority to require comment; and it is a fair inference from the wording of our statute that the purpose of the ex7 plicit definition was to exclude conditional sales, except such as by their terms could be, and, by intention of parties were in fact, mortgages.
• It seems to be 'settled that parol testimony can be resorted to only where there is nothing on the face of the papers to determine whether the transaction is a conditional sale or a mortgage. Jones on Mortgages, par. 277.
In other words, the nature of the transaction, as shown by the papers, must be such as to be susceptible of either construction, in order that its real character can be established by parol testimony; and it has been held that where the provisions of the contract are inconsistent with the idea that a mortgage to secure an indebtedness was intended, it will be interpreted accordingly. 80 Ills., 188, Hanford v. Blessing; 47 Wisc., 160, Smith v. Crosby; 83 Ind., 275, Hays v. Carr; 109 Ind., 260, Voss v. Ellar; 72 Pac. Rep., 20, Yost v. Bank (Kansas); 74 S. W. Rep., 813, Pumilia v. DeGeorge (Texas).
The research into cases upon this subject leads into a labyrinth from which it is hard to emerge with a clear and satisfactory criterion by which the character of such transactions may be determined; and yet, after quite an extensive investigation of authorities, I am led back to the general view indicated above in construing our own statute on the subject, as the true one.
In Flagg v. Mann, 2 Summer, 553, Justice Story lays down this rule:
*542 “It has been said that the true test whether the conveyance in this case was a mortgage or not, is to ascertain whether it was a security for the payment of money or not. I agree to that; indeed, in all cases, the true test is to ascertain whether the conveyance is a security for the performance or non-performance of an act or thing.”
So, in Brant v. Robertson, 16 Mo., 129, it is said:
“In determining whether the transaction was a conditional sale or a mortgage, the first fact to be ascertained is whether the relation of debtor and creditor existed previous to, or was created at the time of, the conveyance. It may be taken as •universally true in law, that no conveyance can be a mortgage unless it is made for the purpose of securing the payment of a debt or the performance of a duty.
“If payment of money is the object of the security or conveyance, then there must exist a duty to pay the money, * * * Where the form of the instrument is not conclusive either way, resort must be had to the circumstances attending the transaction.”
See, also, 2 B. and B. Cas. in Chancery, 274, Goodman v. Grierson, in which the Lord Chancellor applies the rule of mutuality of remedies and says: “Why am I, contrary to the express provisions of this deed, to hold it to be a mortgage, and to extend the condition beyond the limits agreed upon by the parties of the deed ? ’ ’ That is to say, if as a mortgagee the vendee were to bring the property to a sale as under foreclosure, and it sold for less than the amount invested, he could have no remedy over for the residue, either upon covenant or the implied assumpit. See to same effect, 30 Mass., 411, Bodwell v. Webster.
In 7 Cranch, 218, Conway’s Extr. v. Alexander, Chief Justice Marshall says:
“To deny the power of two individuals capable of acting for themselves to make a contract for the purchase and sale of lands defeasable by the payment of money at a future day, or, in other words, to make a sale with a reservation to the vendor of a right to repurchase the same land at a fixed price and at a specified time, would be to transfer to a court of chancery in a considerable degree the guardianship of adults as well as infants. Such contracts are certainly not prohibited *543 by the letter or policy of the law. * * * As a conditional sale, if really intended, is valid, the inquiry in every case must be whether the contract in the specific case is a security for the repayment of money, or an actual sale.”
In two comparatively late cases, the Supreme Court of the United States has substantially reaffirmed these doctrines.
In 129 U. S., 58, Wallace v. Johnstone, it is held that a transaction, similar to that at bar, where a time is fixed for the repurchase, will not be held a mortgage unless it is clearly shown either by parol evidence or the attendant circumstances to have been intended by the parties as security for a loan or an existent debt (citing 118 U. S., 80; 116 U. S., 108; 97 U. S., 624; 112 U. S., 144).
The ease of Bogh v. Gassert, 149 U. S., 17, presented as strong a ease upon the facts as could well arise. There was. a deed and a time lease back with privilege of repurchase in a given time. The privilege not having been exercised, suit was-brought to dispossess the tenant, and a plea of title interposed, by Bogk who introduced testimony showing that the transaction was intended as a mortgage; that plaintiff never had possession; that the negotiations were for a loan for the purpose of raising money to pay off mortgages, judgments, liens, etc., on the property; and showing also that the consideration and repurchase price was the amount loaned ($15,000), with the interest compounded monthly for the term of the lease (aggregating $17,935), and that the real value of the property was $40,000 to $50,000. The court, in concluding the opinion, says of it:
“All his evidence amounts to is that he wanted a loan of' money, and that plaintiff insisted on a deed or an agreement to convey, instead of a mortgage. But defendant did not claim to have been imposed upon, deceived or defrauded, and he had no right to a request (as to a charge) based upon this hypothesis. ’ ’
A careful review of a large number of cases from many states seems fairly to establish the principle that where the-transaction involves a privilege of purchase or bond for reconveyance to be availed of at a certain time, such may be, upon *544 parol testimony of intention, considered and treated in equity as defeasance and give character to the transaction as a mortgage, and the equity of redemption may be enforced. But nowhere have I found an authority for such a holding upon a perpetual lease with privilege of purchase at lessee’s option, imlimited in time.
The decided weight of well-considered authority is to the effect tersely expressed in a recent case, by the Supreme Court of Illinois: “A mortgage is security for a debt or obligation and an incident thereto; and it is therefore held that a debt or obligation of some kind is an essential element in a mortgage”; and because the bond in the case merely provided that if the plaintiff should pay a certain sum with interest and taxes a reconveyance should be made, yet because the bond created no liability enforceable at law and no debt 'or obligation to repay, the transaction was held to be a sale and not a mortgage. Carroll v. Tomlinson, 192 Ills., 398 (401) ; Bacon et al v. Bank, 191 Ills., 205; Burgett v. Osborne, 172 Ill., 227.
The Ohio eases on this subject are of the same general character as those from other jurisdictions cited.
In Miami Exporting Co. v. Bank, Wright’s Rep., 249 (252), the privilege of purchase was limited in time. The same conditions appear in Marshall v. Stewart, 17 O., 356; in Cottrell v. Long, 20 Ohio, 464; in Wilson v. Giddings, 28 O. St., 554; and in Patrick v. Littell, 36 Ohio St., 79. In all these cases the circumstances left no doubt of the character of the transactions as being, and as intended to be, mortgages in fact.
But there are eases much more to the point. Thus, in Miller v. Stokely, 5 Ohio St., 195 (198), a bill to establish a trust in the nature of a mortgage upon a deed absolute was dismissed upon the holding that proof such as to excite suspicion or even probability is not sufficient; and that proof in such cases must be “affirmative and so conclusive as to remove all reasonable and well founded doubts.”
In Stutz v. Desenberg, 28 O. St., 372, there was a contract to reconvey upon payment at a specified time; yet the circuit court is reversed, and the transaction held to be a sale and not *545 a mortgage, upon a very full discussion, part of which is as follows:
“A mortgage, when in form a deed absolute, and a conditional sale, are frequently so nearly allied to each other that it is sometimes difficult to say whether a particular transaction is one or the other. •
“The distinctive difference, however, appears to be this: the former is a security for a debt; the latter is a purchase of land * * * accompanied by an agreement to resell at a given time for a, given price.”
The court cites Goodman v. Grierson (supra), with approval, and quotes the principle that “where no such liability [that is, the remedy over against the grantee for deficiency] accompanies the transaction, the deed covers a sale and not a mortgage.”
The court also cites with approval the ease of Conway’s Extr. v. Alexander (supra), and declares that the American rule is in harmony with the English rule on the subject; and further cites with approval the rule in Robinson v. Cropsey, Edwards Ch., 138, as follows:

‘‘Where the money advanced is not paid by way of a loan, so as to constitute a debt or liability to repay it, but, by the terms of the agreement the grantor has the privilege of refunding or not at his election, then it must be deemed purchase money and the transaction will be a sale upon condition.”

This case establishes the rule in Ohio as applicable to the ease at bar. Kemper v. Campbell, 44 O. St., 210 (214), was a creditor’s suit, in which the right to claim a deed absolute to be a mortgage in fact is held to be recognizable in equity only for the purpose of preventing imposition and injustice, and as a remedial right of redemption merely, and not of foreclosure. 1
The court holds that: ‘ ‘ There is a marked difference between an absolute deed held to be a mortgage and a deed that is intended to be and is a mortgage on its face.” Again the court says (p. 219):

“The absence of a promise to pay, and of a provision in the deed that upon payment the conveyance shall be void, marks 
*546
the distinction between a proper mortgage and an absolute conveyance with a right reserved to the grantor to claim a reconveyance on payment of the money.”

The cases cited complete the list of decisions of our Supreme Court that bear directly upon the subject, excepting, possibly, Stratton v. Sabin et al, 9 O., 28, to which reference will be made later.
McCammon v. Cooper, 69 O. St., 366, seems to still further emphasize the difference between a mortgage and a conditional sale transaction, the one bringing into existence an intangible subject of taxation called a “credit,” the other producing a “ground rent,” which the court classes as real estate. Indirectly, therefore, this case may be said to affirm Slutz v. Desenberg (supra), by showing, inferentially, that only the intermediate transactions involving a time lease are capable of equitable transformation according to intent of parties.
In view of the principles established by the authorities cited, which are selected from many because of the clear statement of principle, Slutz v. Desenberg (supra) is decisive of this case.
In this connection, it is not without significance that no case upon a 'perpetual leasehold with privilege of purchase at the unlimited option of the lessee, has' ever reached the Supreme Court of this state, and that no such case appears among the large number of others examined in the preparation of this opinion. This fact can only mean that the principle is regarded by the bar generally as beyond question. I have not overlooked the case of Coleman v. Miller, 6 L. B., 39, decided by our old district court in 1881; but an inspection of the case will show that for aught that appears the lease in question may have been a time lease. At all events the facts found show that both parties, at the date of the transaction, distinctly regarded it as a mere loan upon security of the land. In view of the later utterances of our own Supreme Court, courts of other states, and of the Supreme Court of the United States, I can not accept it as authority for the purposes of this case, even if its facts permitted or if it bore evidence of a careful consideration of the authorities, which it does not.
*547 Such a case, in other words, does not fall within the debatable class,' as to which extrinsic testimony is admissible. Its character is fixed by its own terms. Jones on Mortgages, Sec. 261; Stratton v. Sabin et al, 9 O., 28 (32), in which case the court cite with approval the following holding in the case of Glover v. Paine, 19 Wend., 518:
“The mere fact of a conveyance of land, and an agreement for reconveyance at a future day at an advanced price at the election of the grantor, afforded no evidence of an intention that the deed should be considered a mortgage, though the question might have arisen had the deed been given fr a pre-existing debt, or on a loan of money, or had the grantor entered into an obligation to repay the consideration money expressed in the deed.”
The case in 19 Wendell is a well-considered authority in support of the proposition that “where there is no debt and no loan, an agreement to resell will not change an absolute conveyance into a mortgage.” See also Kunkel v. Wolfersberger, 6 Watts, 126. But even if resort be had to the testimony, the facts disclosed, as deduced from its preponderating weight, support the character of the transactions as conditional sales.
It may be freely admitted that there was on one side money seeking investment, and, on the other, a necessity for the use of money. Tet it was quite within the right of parties to agree upon such terms as they might choose, whereby one should give and the other receive. There was, in effect, an exchange of the land for' money, coupled with a right or option in the grantor to change bach again if he should desire, or not to do so if he should not see fit. Certainly there was no obligation ereated, and both parties fully understood and acquiesced in these terms. Should the land depreciate in value, the loss would fall upon the vendee, who had no means of enforcing any claim against the vendor, for he had given his money upon an exchange which created no debt nor obligation on which a claim could be based. The few chance expressions that might seem inconsistent, elicited from the parties many years after the events, by an adroit and aggressive cross-examination — expressions used in a loose, popular and inaccurate sense — do not *548 change the essential weight of the testimony as a whole. The answer to the claims of counsel in this behalf is found, by analogy, in Bank v. Slemmons, 34 O. St., 142:
“If the payee take from the maker a promissory note, and at the same time surrender the maker’s note of an earlier date given for a loan of money, the facts, and not merely what the payee called or considered the transaction, will determine whether it was a renewal or payment of the original loan.”
Such proof, even if it might raise a suspicion — like the coincidence of the amount of rent with a given interest on the sums paid — can not convert into a mortgage a transaction which, on its face, bears no such suggestion, much less one that by its inherent nature in law is not convertible. Indeed, taking all possible extrinsic facts into view, they do not present so strong a case as Bogh v. Gassert (supra), which the Supreme Court of the United States, upon a full citation of authorities, declared to be a sale, and not a mortgage, even in the face of inadequacy of consideration and a time limit of the privilege of repurchase.
If the conclusions reached are correct, it also disposes of the claim arising from the increase or decrease of rentals and partial payments of purchase money in certain of the eases, for I apprehend that the familiar principle of equity — ‘£ once a mortgage, always a mortgage” — would apply to a conditional sale. (Jones on Mortgages, Secs. 263, 269.) It is time that parties may, by subsequent agreement so to do, completely change the character of the transaction; but if the transactions in this case .were conditional sales, it is because they lacked the vital elements of a mortgage at their inception, and consequently no change in details, short of supplying the missing links — so to speak — could change their legal character.
The statements of the text-books, summarizing the authorities oh this subject, are not always accurate, as will appear from the citation by counsel from Cooley on Taxation to the precise point under discussion. The citation >is the broad statement from the 3d Ed., on p. 768, as follows:
“Where, however, under the revenue laws, land is taxable, and also a mortgage upon it, if one from whom money is ob *549 tained, instead of taking a mortgage for ’ the amount, takes an absolute conveyance and gives back a lease with a stipulation to sell back the land on repayment of the money with interest— the whole transaction ’being obviously a loan and the taking of security therefor — the land may still be taxed to the borrower and the lender taxed as mortgagee” (citing 39 Iowa, 228, Waller v. Jaeger; 6 Kan., 403, Lappin v. Nemaha Co.; 36 O. St., 79, Patrick v. Littell).
But, the eases cited by Judge Cooley — and they can be hardly considered as leading cases on the subject — were obvious cases upon their facts; and, in each, there was a privilege of purchase within a specified period. If the terms of his statement— “repayment of the money with interest” — be taken literally, it converts the broad statement into a limited one; and, in view of'the expression, “instead of a mortgage,” which immediately precedes, this is probably what is meant, viz., a loan of money to be repaid at a specified time with interest.
That this is what is meant, and no more, is fairly to be inferred, because, a little earlier in the same connection, he declares that the intention of the party — were his purpose to avoid taxation— is not in all cases the governing factor, citing as instances investments in government securities, and the change of personalty into real estate with a lease for years back, in order to avoid taxation. He says of these:
“In each of these cases the party is only exercising a right which the law allows to him.” .
The case of Eess v. Muir, 65 Md., 586, cited as a “battle ease,” will be found to turn upon a wholly different point, namely, that of a fraudulent attempt to cover usury, which vitiates a contract under the law. But even here, the court says, passim:
“It is plainly shown that the money was obtained as a loan, and that the deed and lease were but means of security for the amount agreed to he repaid.”
With reference to the legal effect of the action and finding of the auditor in these cases, it may be remarked, briefly, that where the amount only is in question, it may have force; but *550 where the foundation of the right to tax is challenged, the action of the auditor is prima facie only.
Full jurisdiction exists in this court. . It is unquestionable that the right of the tax-payer to enjoin collection can not be taken away by any action of a taxing officer or board. Gager v. Prout, 48 O. St., 89; Hagerty v. Huddleston, 60 O. St., 149 (165-7); Musser v. Adair, 55 O. St., 466 (471).
The injunction prayed for should be granted, and it is so ordered.
Judgment for plaintiff and injunction ordered.