## THOMAS v. OGDEN STATE BANK et al.

No. 5180.   Decided August 18, 1932.   (13 P. [2d] 636.)

*Harley W. Gustin* and *R. Leslie Hedrick,* both of Salt Lake City, for appellant.

*Wade M. Johnson* and *Valentine Gideon,* both of Ogden, for respondents.

STRAUP, J.

The court below sustained a general demurrer to the amended complaint of the plaintiff, Thomas Thomas, and upon his refusal to further plead, the action was dismissed. He appeals. The ruling sustaining the demurrer is thus the only question presented for review.

By the complaint it in substance is alleged that the plaintiff, in September, 1923, and prior thereto and at the commencement of the action, was the owner and entitled to the possession, "subject to certain liens and encumbrances," of about 53 tracts of land described in the complaint aggregating about 24,000 acres consisting of grazing lands situate in Box Elder county; that in September, 1923, the plaintiff was indebted to the defendant the Ogden State Bank in the sum of $70,000, to Charles S. Morris $47,700, H. C. Simpson $15,500, and Warren L. Shobert $1,300, "all of which indebtedness was then secured by various liens and encumbrances on portions of the real property" described in the complaint, which real estate was used for grazing, breeding, and raising a large number of sheep; that the "plaintiff was unable to meet the obligations" referred to "as the same became due," and that "it then was an inopportune time to secure the full value for said land then owned and possessed by the plaintiff or to sell the same on execution sale or otherwise, and satisfy said obligations therefrom"; that the defendant

creditors, just referred to, for the purpose of securing the several indebtednesses due them and to cause the indebtedness "to be paid, liquidated and discharged and in furtherance thereof to retain plaintiff's holdings and ownership in and to the said real property intact, and to operate the same for their benefit and to the end that their respective claims be paid as aforesaid," in September, 1923, caused the defendant Grouse Creek Land and Livestock Company to be incorporated and induced the plaintiff "to convey by deeds and conveyances absolute in form to the said defendant Grouse Creek Land and Livestock Company for the purposes aforesaid and to secure said indebtednesses, the legal title to all the several pieces and parcels of real property" described in the complaint, but that "said deeds and conveyances were intended by said parties as security for the payment of said indebtedness and said deeds and conveyances were made to the Grouse Creek Land and Livestock Company for the purpose of holding the legal title to said real property and to manage and operate the same for the purpose of grazing, raising and breeding of sheep thereon, and all to the end that the several claims and indebtedness in favor of said creditors be liquidated and discharged as aforesaid"; that in pursuance of such plan, and as a part of such transaction, "the capitalization of the Grouse Creek Land and Livestock Company in April, 1924, was increased to the sum of $200,000 divided into 2,000 shares of the par value of $100 a share and that the several creditors," heretofore mentioned, "released on record their several liens and encumbrances against the real property conveyed by the plaintiff to the Grouse Creek Land and Livestock Company as aforesaid, and took in lieu thereof and as a substitute therefor capital stock of the said Grouse Creek Land and Livestock Company in the amount of the par value of their respective claims and indebtednesses as aforesaid; that said capital stock so issued represents and evidences the debts owing to said creditors, respectively, by the plaintiff"; that at the same time a written agreement was entered into by

and between the plaintiff as party of the first part, the Grouse Creek Land & Livestock Company as party of the second part, and the defendant creditors heretofore mentioned as parties of the third part, a copy of which agreement was attached to the complaint and made a part thereof, which, among other things, recited the organization of the Grouse Creek Land & Livestock Company; that the plaintiff had deeded to it "his equity in certain lands situate in Box Elder County" described in the complaint, "subject, however, to the claims of the parties of the third part"; that the plaintiff was indebted to the third parties, to the Ogden State Bank $70,000, to Charles S. Morris $47,700, to Heber C. Simpson $15,500, and to Warren L. Shobert $1,300. Such contract further recited that it was "mutually understool and agreed that the parties of the third part shall relinquish their claims against said property and in lieu of said claims and in payment of their respective indebtedness shall take capital stock in the said party of the second part of the par value of said claims, it being further understood and agreed that the said parties of the third part are simultaneously herewith to give and grant to the party of the first part an option to purchase said stock upon the terms and conditions as set out in said option, and that said option shall represent and embody all the right, title and interest of said party of the first part in said real estate and said stock shall be in full payment of the claims of the respective parties of the third part."

It further is alleged that simultaneously with the execution of the agreement just referred to, a further agreement was entered into by and between the plaintiff as party of the first part and the defendant creditors heretofore mentioned as parties of the second part, by the terms of which the second parties granted unto the plaintiff an option to purchase the capital stock of the Grouse Creek Land & Livestock Company issued to them, a copy of which agreement was also attached to the complaint and made a part thereof, which, among other things, recited that the second

parties were "the owners of the amount of capital stock of the Grouse Creek Land and Livestock Company, Ogden State Bank 700 shares, Charles S. Morris 477 shares, Heber C. Simpson 155 shares, and Warren L. Shobert 13 shares"; that the plaintiff was desirous of purchasing such stock, whereupon, for a consideration of $10 and other valuable consideration, the second parties granted unto him "an option to purchase said stock at the price of $100 a share with interest at the rate of 11% per annum for the first three years after date of the agreement (April 1924), 9% for the following year, and 8% for the last year"; that the option granted was to be exercised at any time within five years from the date of the agreement; "and that in the event that the said party of the first part shall not exercise his option within said period, all his right, title and interest under and in pursuance of this agreement shall terminate." The contract further provided that the stock was to be put in escrow and when paid for as by the option provided was to be delivered to the plaintiff and that the "option hereby granted is as to said stock as a whole."

It then further is alleged in the complaint that the deeds of conveyances made by the plaintiff to the Grouse Creek Land & Livestock Company and the contracts heretofore referred to, while on their face absolute and unconditional, yet in fact were "agreements of mortgage and for security and intended as such by and between" all of the parties concerned, and "were a part of the plan whereby the Grouse Creek Land and Livestock Company was to take over the title to the real property, possess, occupy and manage the same," to the end "that the several indebtednesses due and owing and existing in favor of the said creditors be paid and discharged, and said real property to then become subject to the use, control, ownership and possession of the plaintiff"; that to the extent that such agreements or conveyances "purported to release or relinquish plaintiff's equity of redemption in and to said real property, they and each of them were unlawful and void"; and that, unless the

court declared the conveyances and agreements to be a mortgage or mortgages, "the defendants will deprive the plaintiff of his right of redemption therefrom."

The prayer is that the conveyances and contracts referred to in the complaint be declared to be a mortgage or mortgages, the plaintiff the mortgagor and redemptioner and "entitled to the redemption in and to the several pieces and parcels of real property" mentioned and described in the complaint, "subject only to the payment of all proper claims and demands to which said defendants or any of them may be lawfully entitled," and for general relief.

It is not alleged what the "liens and encumbrances" on the real estate were when in September, 1923, the plaintiff by deed conveyed the properties to the livestock company. It is alleged that the indebtedness then owing the several defendant creditors "was secured by various liens and encumbrances"; but the character of such liens, whether mortgages or otherwise, is not alleged. They were of record, for it is alleged they "were released on record." The allegations in such particular were not challenged by special demurrer, and thereunder the plaintiff would be permitted to prove that the liens were mortgages. Neither by brief nor argument did the plaintiff in any way characterize the liens. The respondents, however, in their brief referred to them as mortgages. Since the plaintiff could so prove them, let it be assumed they were mortgages.

The argument of the plaintiff is that the deed of conveyance given in September, 1923, by him to the livestock company, though absolute and unconditional on its face, nevertheless was given to secure existing indebtedness of the several defendant creditors and hence the deed regardless of its terms in equity constituted a mortgage, and that it was competent to show such an intention by parol and other extrinsic evidence; and thus, under the statute (Comp. Laws Utah 1917, § 7253), to cut off plaintiff's equity of redemption required a foreclosure of the mortgage and a sale of the mortgaged premises. Numerous

texts and authorities are cited by the plaintiff to the effect that where a deed or other instrument, no matter what its form may be, is given as security for a debt or for the performance of some other obligation, the right of redemption attaches requiring a foreclosure and sale; and where a mortgagor gives an absolute deed of conveyance of the mortgaged premises to the mortgagee or to another, not in payment or extinquishment of the debt secured by the mortgage but in recognition of it, with a defeasance or an agreement to reconvey on payment of the debt, the deed is but a mortgage and not a conditional sale and that evidence outside the instrument is competent and may be resorted to to determine the character of the transaction and the intention of the parties. *Duerden* v. *Solomon,* 33 Utah 468, 94 P. 978, 979; *Wallace* v. *Johnstone,* 129 U. S. 58, 9 S. Ct. 243, 32 L. Ed. 619; *Bogk* v. *Gassert,* 149 U. S. 17, 13 S. Ct. 738, 37 L. Ed. 631; *Gover* v. *Hawthorne,* 62 Or. 77, 114 P. 472, 121 P. 808; *Todd* v. *Todd,* 164 Cal. 255, 128 P. 413; *Hawkins* v. *Elston,* 58 Colo. 400, 146 P. 254; *Reitze* v. *Humphreys,* 53 Colo. 177, 125 P. 518; 41 C. J. 311 et seq., 323 et seq., 331 et seq.; Jones on Mortgages (7th Ed.) 311, 313, 327, and 335.

The propositions so contended for by plaintiff and as shown by the cited authorities are not disputed by the respondents. They, however, contend that the authorities are not applicable to the facts as alleged in the complaint, for the reason that, as alleged, the mortgages which were given to secure the indebtedness and the claims against the property were released on record by the defendant creditors, that they in lieu of their claims and in full payment of their respective indebtedness took capital stock of the livestock company and granted the plaintiff an option to purchase the stock on terms and conditions stated in the option, which option represented and embodied all the right, title, and interest the plaintiff had in and to the real estate or the stock, and that in such case the maxim relied on by the plaintiff, "Once a mortgage, always a mortgage," has

no application. Such statements, as we think, properly reflect the substance of the complaint. In 1 Jones on Mortgages (8th Ed.) § 316, p. 386, in considering when the instrument may be regarded a mortgage and when a sale or a conditional sale, the author says:

"The existence of the debt is the test. If an absolute conveyance is made and accepted in payment of an existing debt, and not merely as security for it, an agreement by the grantee to reconvey the land to the grantor upon receiving a certain sum within a specified time does not create a mortgage, but a conditional sale, and the grantee holds the premises subject only to the right of the grantor to demand a reconveyance according to the terms of the agreement. If the debt is not extinguished by the conveyance, but continues as a subsisting obligation, the transaction will be regarded as a mortgage. A debt either pre-existing or created at the time or contracted to be created, is an essential requisite of a mortgage. * * * There must be a debt or there can be no security for its payment. Hence it is said if there is no debt there can be no mortgage."

Under the authorities we think the transaction as alleged, considered as a whole, constituted a conditional sale and not a mortgage. *Shaner* v. *Rathdrum State Bank,* 29 Idaho 576, 161 P. 90; *Kelly* v. *Lehmann,* 297 Ill. 33, 130 N. E. 375; *Bailey* v. *Frank,* 170 Ark. 610, 280 S. W. 663; *Cullen* v. *Butterfield,* 178 Iowa 621, 160 N. W. 125; *Johnson* v. *National Bank of Commerce,* 65 Wash. 261, 118 P. 21, L. R. A. 1916B, 4; *McGuin* v. *Lee,* 10 N. D. 160, 86 N. W. 714; *Angus* v. *Holbrooke,* 87 Or. 543, 170 P. 1179; *Thomas* v. *Livingston,* 155 Ala. 546, 46 So. 851; *Snell* v. *White,* 132 Ark. 349, 200 S. W. 1023; *Holmberg* v. *Hardee,* 90 Fla. 787, 108 So. 211; *Fabrique* v. *Cherokee, etc., Mining Co.,* 69 Kan. 733, 77 P. 584; *Randall* v. *Sanders,* 87 N. Y. 578.

We are not unmindful of the repeated allegations of the complaint that the organization of the livestock company, the deed of conveyance by plaintiff to the company, the taking of capital stock by the defendant creditors in lieu of and in payment of their claims and of the indebtedness, and the entering into the contracts referred to, were but parts of one transamtion to secure the in-

debtedness of the several defendant creditors, notwithstanding the allegations in the complaint and the recitals in the contracts that the stock was issued to and accepted by the defendant creditors in full payment of their claims and of the indebtedness. Had the allegations merely been of facts that the deed though absolute in form nevertheless was given, not as a conveyance of the fee or of the plaintiff's equity, but merely as security for the indebtedness of the several defendant creidtors, with a defeasance or agreement of reconveyance upon the payment of the indebtedness at a stated time, and nothing further alleged inconsistent therewith, let it be assumed such a complaint would be less vulnerable than the one in hand  While it thus in general terms is alleged that by the whole plan or scheme it was the intention of the parties to secure existing indebtedness of the defendant creditors, yet at the same time further specific allegations of fact are alleged inconsistent with such general allegations. That is to say, while it in general terms is alleged that all such things were done to secure an indebtedness, yet by the alleged contracts made a part of the complaint and by other allegations, it is alleged and made to appear that the conveyance was made to the livestock company and the stock issued to and accepted by the defendant creditors in lieu of their claims and in payment of their respective indebtedness and that they on the record released their liens and claims and took in lieu thereof stock in the livestock company. It is a familiar rule in pleading that general allegations are controlled by special allegations inconsistent therewith. *State* v. *Rolio,* 71 Utah 91, 262 P. 987; 49 C. J. 119.

From the complaint and by the brief of plaintiff, the thought seems to be entertained that in cases of this character—a determination whether a deed or other instrument is a mortgage or an unconditional or conditional sale or otherwise—parol and other extrinsic evidence may ■ be resorted to even to vary the terms of the written instrument. That is not the correct rule. Such evidence is

resorted to, not to vary the terms of the written instrument, but merely to show the *object or purpose* for which it was given. The rule in such respect is well stated in the case of *Peugh* v. *Davis*, 96 U. S. 332, 336, 24 L. Ed. 775. The court there said:

"It is an established doctrine that a court of equity will treat a deed, absolute in form, as a mortgage, when it is executed as security for a loan of money. That court looks beyond the terms of the instrument to the real transaction; and when that is shown to be one of security and not of sale, it will give effect to the actual contract of the parties. As the equity, upon which the court acts in such cases, arises from the real character of the transaction, any evidence, written or oral, tending to show this is admissible. The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties. That cannot be qualified or varied from its natural import, but must speak for itself. The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument. Thus, it may be shown that a deed was made to defraud creditors, or to give a preference, or to secure a loan, or for any other object not apparent on its face."

The doctrine was reaffirmed in the case of *Brick* v. *Brick*, 98 U. S. 514, 25 L. Ed. 256. The same thought is expressed in *Duerden* v. *Solomon*, supra, where it is said that the rule which excludes parol evidence to contradict or vary written instruments "does not forbid an inquiry into *the object* of the parties in executing and receiving the instrument." The author in 1 Jones on Mortgages (8th Ed.) 377, says that "when the means by which the effect of a deed may be obviated are put in writing by the parties, the writing supersedes any prior oral understanding," citing *Carter* v. *Simpson Estate Co.*, 103 Or. 383, 193 P. 913, 203 P. 580, which fully supports the text. The same thought is expressed in *Kerby* v. *Feild*, 183 Ark. 714, 38 S. W. (2d) 308.

Here by the complaint it is alleged and by the contracts stipulated that the defendant creditors released their liens and claims on the record; that the plaintiff conveyed his equity to the livestock company and that the defendant creditors took capital stock of the company in lieu of and in

full payment of their claims and indebtedness and gave the plaintiff an option to purchase the stock within a time and upon terms and conditions therein stated, which option expressed all the right, title, and interest in and to the real estate and stock possesesed by the plaintiff; and that upon his failure to exercise the option within the time stated all rights of the plaintiff were therein terminated. When thus the means, purpose, and effect of instruments and writings are within and by themselves so fully expressed, they are binding on the parties and unambiguous terms thereof may not be disputed, except on allegations and proof of mistake, deceit or fraud, or of oppression or over-reaching.

Further there is no allegation of a defeasance or any agreement to reconvey the properties to the plaintiff. While any informal defeasance or agreement to reconvey may suffice, yet here there is no sufficient allegation of any such an agreement or understanding. Nor is there any allegation or alleged facts that the plaintiff was obligated to pay the alleged existing indebtedness. On the contrary, it is alleged that the stock was received and accepted by the defendant creditors in full payment of their claims and of the indebtedness. Nor by the terms of the option was the plaintiff under any obligation to purchase the stock or to pay any part of the alleged indebtedness. Under such circumstances the transaction was a conditional sale and not a mortgage. 1 Jones on Mortgages (8th Ed.) § 294, p. 345; *Bell* v. *Shiver*, 181 Ala. 303, 61 So. 881; *Mittlesteadt* v. *Johnson*, 75 Wash. 550, 135 P. 214.

It is not alleged what, if anything, the plaintiff did with respect to the option. By its terms he was to exercise whatever right he had therein within five years from the date of the option. That time expired April 24, 1929. It was nearly a year thereafter, March 20, 1930, when this action was commenced. It is alleged that when the properties in September, 1923, were conveyed to the livestock company they were not of sufficient value to pay the then existing

indebtedness of the defendant creditors aggregating $134,-500. It is alleged such indebtedness was then due but that a sifficient amount could not be realized from a sale of the properties to pay the indebtedness either of principal or interest, which when judgment of dismissal was entered amounted to over $216,000, nor is it alleged that the properties since, or at the commencement of the action, had a value greater than in 1923 or what the present value was, or that more could now be realized on a sale of them than in 1923. What net or other profit, if any, the livestock company realized from the properties since they were conveyed to it, or what dividends, if any, the defendant creditors received on the capital stock issued to them, is not alleged. It is alleged that the defendant creditors "were the owners" of 1,345 shares issued to them of the total 2,000 shares of the capital stock of the livestock company, but it is not alleged whether the remaining 655 shares were outstanding or not, or, if so, whether any part of them was issued to the plaintiff or to whom they were issued, nor is it alleged that the plaintiff and the defendant creditors are the only persons interested in the company or who managed or conducted its business or affairs. In fact, not anything is alleged that on any theory the plaintiff had any interest, either legal or equitable, of any real or probable value in or to the properties or in what respect he would be benefitted by a foreclosure, or wherein his claimed equity of redemption had any value whatever.

And lastly the defendant creditors as alleged and shown by the contracts entered into by them with the plaintiff, releasing their liens and claims of record and receiving and accepting the capital stock in full payment of their claims and of the indebtedness, are precluded from enforcing such claims or the indebtedness against the plaintiff, if in such an action the defense of payment or accord and satisfaction be interposed. If in such case the defendant creditors must fail because the indebtedness was paid or extinguished, for the same reason must the plaintiff

fail in his demand, for where there is no debt there can be no mortgage.

The judgment is thus affirmed, with costs to the respondents.

CHERRY, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.