## COYLE v. DAVIS & Another.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Submitted December 4, 1885.—Argued December 9, 1885.—Decided December 21, 1885.

The grantor in an absolute deed of an undivided interest in land, in fee-simple, sought, by a suit in equity, against the grantee, to have it declared a mortgage. There was no defeasance, either in the deed or in a collateral paper, and the parol evidence that there was a debt, and that the intention was to secure it by a mortgage, was not clear, unequivocal, and convincing, and it was held, that the presumption that the instrument was what purported to be must prevail.

The weight of the testimony was, that the transaction was a sale, and that the property was sold for about its sale value, in view of the facts, that there was a poorly built and poorly arranged building on the premises, which was incapable of actual partition, and that the law did not permit a partition by a sale *in invitum,* and that the grantor's interest was a minority interest.

In equity. In the absence of plaintiff's counsel when this

case was called it was submitted by counsel for defendants. On motion, and for reasons shown the submission was set aside and argument ordered. The facts are stated in the opinion of the court.

*Mr. Benjamin F. Butler* and *Mr. O. D. Barrett* for appellant.

*Mr. W. D. Davidge* and *Mr. Henry E. Davis* for appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an appeal from a decree of the Supreme Court of the District of Columbia, made in general term, July 6, 1880, dismissing the bill of complaint, in a suit in equity brought by John F. Coyle against Henry S. Davis, William E. Spalding, and William W. Rapley. The bill was filed May 24, 1869, to redeem a parcel of land in the city of Washington alleged to be covered by a mortgage held by the defendant Davis. The substantial averments of the bill are, that Coyle, Spalding, and Rapley, in April, 1863, purchased the land, as tenants in common, and it was, by their mutual consent, deeded to Rapley; that Coyle's share was encumbered by a deed of trust executed as security for a loan made to Coyle by one Riggs; that, in order to pay Riggs, Coyle, in June, 1866, applied to Davis for a loan of $6000; that Davis had, for a long time, made many professions of warm friendship for Coyle, and of willingness and desire to serve him, and had acquired Coyle's full confidence, and, upon such application, offered to make to Coyle such a loan as would both pay Riggs and settle up all Coyle's accounts with Spalding and Rapley, in respect of the land, and, as security for the loan, asked a mortgage on Coyle's undivided one-third of the land, which would thus be free from all encumbrance and indebtedness, and suggested that a statement of Coyle's accounts with Spalding and Rapley be furnished to him, Davis; that, on or about June 12, 1866, Davis was furnished with a written instrument signed by Spalding and Rapley, fully setting forth Coyle's account in respect of the land; that, thereupon, Davis,

well knowing that one-third interest in the land was worth about $30,000, and would increase in value, urged Coyle to take a loan from him of about $17,000, in order to settle his account with Spalding and Rapley, as well as pay his debt to Riggs, and to give him, Davis, a mortgage on Coyle's interest, as security; that, as inducement to this course, Davis represented that the arrangement proposed by him would be freer from complication than any other, and would give him an independent security for the loan, and that his business, as well as his desire to serve Coyle, would afford him opportunity to effect, for the benefit of Coyle, a highly advantageous sale of said interest in the premises, from the proceeds of which he could retain the balance due on his loan, and pay over the residue to Coyle, and that this arrangement would tend to the benefit of both parties; that Coyle acceded to the proposition, and Davis loaned to Coyle $17,659.46, by advancing $6000 to pay the debt to Riggs, and assuming the payment, to be made as it should fall due, of the unpaid balance on Coyle's one-third interest, viz., $11,659.46; that, as security for the loan, Davis took a mortgage on Coyle's undivided one-third of the land, in the manner following, to wit: Rapley and Coyle, on or about July 6, 1866, conveyed to Davis Coyle's undivided one-third interest in the land, by a deed absolute in form, but the force and operation of which were defeated by the understanding, agreement, and contract between Coyle and Davis, that the deed was executed as security for the loan, and that between the parties the conveyance should have the operation, force, and effect of a mortgage, and none other, and that Davis should enter upon, and take possession of, the mortgaged property, as security for the loan, and subject to an account for its rents and profits, and whenever Coyle should offer to redeem the property an account should be had in respect of the rents and profits received by Davis, on the one hand, and of Coyle's debt, principal, and interest, on the other hand, and, on proffer of payment of the sum thus found due, if any, from Coyle to Davis, Davis, by conveyance of the property to Coyle, should surrender possession of it to Coyle, and while Davis should continue in possession as mortgagee, if he should have an oppor-

tunity to effect an advantageous sale of the property, he should do so for the benefit of Coyle, and should convey title to it and receive the purchase-money, and deduct the balance, if any, due on the loan, over and above the rents and profits meanwhile received by him, and pay over the residue to Coyle; and that Davis went into possession of the property and had received its rents and profits for three years, and had frequently admitted that the transactions between him and Coyle were as above set forth.

The answer of Davis alleges that Rapley, on taking a conveyance of the land, encumbered it, by a deed of trust, with a debt of $20,000, to secure unpaid purchase-money, which was not paid when the deed from Coyle to Davis was made; and that at that time there was a further encumbrance on Coyle's interest of $4100 as a debt to Riggs, secured by a deed of trust of that interest. It denies the allegations of the bill as to the application for a loan, or the offer of a loan, or the asking for a mortgage, or the suggesting or furnishing of a statement of account, and all the other allegations of the bill as to the making of a loan or of a mortgage, or of a deed as security for a loan or as a mortgage. It alleges the facts to be that, about six or eight weeks before the making of the deed to Davis, he was applied to by one Winder, acting as agent for Coyle, to make a loan to Coyle, to be secured by a deed in fee of Coyle's interest in the property, which application was rejected, and it was renewed in person by Coyle, with the same result; that when Coyle renewed it, he exhibited to Davis a paper purporting to show the cost of the property and the money value of the one-third interest of Coyle, after deducting the balance due by him on account of such interest, and $6666.66 as one-third of the unpaid purchase-money; that, afterwards, Coyle proposed to Davis to sell his interest to him for $20,000, but he rejected that proposition, and finally, in July, 1866, offered Coyle $18,000 in cash for such interest, which offer Coyle accepted; that Davis insisted that before the purchase-money should be paid the account of Coyle in respect of the property should be settled; that thereupon the indebtedness of Coyle to Spalding and Rapley in respect of the property was ascertained by a settlement

dated July 7, 1866, a copy of which is annexed to the answer, to be $6258.71; that Davis paid the $6258.71 to Spalding and Rapley, and paid to Riggs what was due to him, and paid the balance in cash to Coyle, less the $6666.66, which was reserved, with the approbation of Coyle, to pay his share of the unpaid purchase-money, and was afterwards paid by Davis; that, on July 7, 1866, Davis received from Coyle a deed executed by Coyle and Rapley and their wives, conveying to him in fee-simple the one-third interest of Coyle; that he took possession of it, and has received its rents and profits, as absolute owner, recognized as such by Coyle and his co-tenants; that Coyle's interest at the time Davis purchased it was not worth $30,000, and Coyle never asked from Davis more than $20,000 for it; and that Davis never admitted that he was mortgagee in possession in respect of Coyle's interest.

The volume of proof taken on the issue thus raised is large, and the evidence is contradictory, as is common in such cases, where, admittedly, a loan of some kind was at some time talked about. The conveyance to Davis of the undivided one-third interest of Coyle being to him, his heirs and assigns, forever, with a covenant of warranty, and without a defeasance, either in the conveyance or in a collateral paper, the parol evidence that there was a debt, and that the deed was intended to secure it and to operate only as a mortgage, must be clear, unequivocal and convincing, or the presumption that the instrument is what it purports to be must prevail. This well-settled rule of equity jurisprudence was applied by this court in *Howland* v. *Blake*, 79 U. S. 624, 626. The case stated in the bill herein is not supported by the weight of evidence. On the contrary, it sustains the allegations of the answer. Especially, the force of the letter of Coyle to Davis, of June 11, 1867, is not broken by any satisfactory explanation. It would serve no useful purpose to discuss the testimony at length. There is but one point to which it is needful to refer. Great stress is laid, in cases of this kind, on inadequacy of consideration, where there is a considerable disproportion between the price paid and the real value of the property. *Russell* v. *Southard*, 12 How. 139, 148. There is testimony on both sides, on the question of disproportion, in this

case. But the preponderance is very large on the part of Davis, that the share of Coyle in the property was sold for about its sale value, in view of its condition. There was a poorly built and poorly arranged building on the premises, which was incapable of actual partition; the law did not permit a partition by a sale *in invitum;* and Coyle's interest was a minority interest. These considerations made it difficult of sale at all.

*Decree affirmed.*