SAUVE v. M. L. MORE INV. CO. (two cases).*

In re MURRAY.

(Circuit Court of Appeals, Eighth Circuit. February 1, 1918.)

No. 4804 (181).

1. BANKRUPTCY ☞446—REVIEW—PETITION TO REVISE.
 On petition to revise, the facts cannot be reviewed.

2. BANKRUPTCY ☞451—"CONTROVERSY ARISING IN BANKRUPTCY PROCEEDING"
 —REVIEW.
  A proceeding on petition by a trustee to sell lands, on the theory that a warranty deed evidenced an equitable mortgage, opposed by the grantee, is a "controversy arising in a bankruptcy proceeding," instead of a proceeding in bankruptcy, and hence an appeal to review a judgment therein lies under the general appellate jurisdiction of the Circuit Court of Appeals; the case not being one in which Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 544, specifically provides for an appeal.
  [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Controversy Arising in Bankruptcy Proceedings.]

3. MORTGAGES ☞33(5)—CONVEYANCES ABSOLUTE ON THEIR FACE.
  Where the bankrupt, being in financial difficulties, and the mortgagees being about to foreclose, by warranty deed conveyed a parcel of the land to an investment company, which at the same time gave her an option to repurchase the premises at any time within a period of seven months, the conveyance was, as it declared, an absolute one; it appearing that the parties so agreed, and that as part of the transaction, which was a most generous one to the bankrupt, she had an option of selling the premises within a prescribed period at their fair value.

Petition to Revise Order and Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

In the matter of the bankruptcy of Naomi Murray. Petition by David B. Sauve, trustee, for sale of lands alleged to belong to the bankrupt, opposed by the M. L. More Investment Company, a Colorado corporation. A finding by the referee in favor of the trustee was reversed on certificate for review, and the trustee appeals and petitions to revise. Petition to revise dismissed, and judgment affirmed.

James H. Brown, of Denver, Colo., for petitioner and appellant.

Henry McAllister, Jr., of Denver, Colo. (Robert M. Work and George C. Twombly, both of Ft. Morgan, Colo., on the brief), for respondent and appellee.

Before CARLAND, Circuit Judge, and AMIDON and MUNGER, District Judges.

AMIDON, District Judge. Sauve is trustee in bankruptcy of the estate of Naomi Murray. He filed a petition before the referee, stating that a quarter section of land with appurtenant water rights were in his possession as part of the estate, and that it was subject to a

first mortgage for $7,500. The petition then states that the property was subject to various liens, which are described, and finally to an equitable mortgage evidenced by warranty deed, given by the bankrupt and her husband to the M. L. More Investment Company, which, as the petition says, was intended to secure the payment of an indebtedness of $4,500. The trustee asked that the property be sold subject to the first mortgage for $7,500, but free and clear of all other mortgages and liens whatsoever, and prayed that all parties in interest be cited to show cause why such an order should not be made. The Investment Company answered the petition. It asserted that the warranty deed was what it purported to be, an absolute conveyance. It denied that the bankrupt, or her trustee, had ever been in possession of the property since the execution of the deed, save and except only as tenant of the Investment Company under a written lease. It prayed that the petition be dismissed upon the merits. The issue thus raised was heard upon elaborate evidence by the referee, and decided in favor of the trustee. The cause was then taken before the District Court on certificate for review, and the decision of the referee reversed.

The trustee has brought the judgment of the District Court here for review by petition to revise and by appeal.

[1, 2] We must first decide which of these methods of review is proper. That depends upon whether the matter constitutes a "proceeding in bankruptcy" or a "controversy in a bankruptcy proceeding." If the former, the petition to revise is not proper, as a decision of the case requires the consideration of conflicting evidence (Wm. R. Moore Dry Goods Co. v. Brooks, 240 Fed. 943, 945, 153 C. C. A. 629), and the decision below is not one from which the bankruptcy law allows an appeal. If the latter, then the appeal lies under the general appellate jurisdiction of this court. Under the decisions of the Supreme Court and of this court, it is clearly a "controversy in a bankruptcy proceeding." Hewit v. Berlin Machine Works, 194 U. S. 296, 299, 24 Sup. Ct. 690, 48 L. Ed. 986; Knapp v. Milwaukee Trust Co., 216 U. S. 545, 30 Sup. Ct. 412, 54 L. Ed. 610; Houghton v. Burden, 228 U. S. 161, 164, 33 Sup. Ct. 491, 57 L. Ed. 780; In re Hartzell, 209 Fed. 775, 126 C. C. A. 499. See, also, Barnes v. Pampel, 192 Fed. 525, 113 C. C. A. 81.

The petition to revise will therefore be dismissed.

On the merits the facts are complex. We shall state only those which seem to us controlling.

[3] Mrs. Murray had owned the property since 1910, and used it for raising sugar beets and diversified farming. In the month of May, 1915, her financial affairs were desperate. She had made default upon both principal and interest of the first mortgage for $7,500, and the holder had been compelled to pay a large sum for delinquent taxes and water assessments. There was then due upon that mortgage $8,736.70, and the mortgagee was threatening to foreclose. There was a second mortgage to Roediger, president of the Investment Company, upon which there was due, and in default for principal and interest, $1,446.52. The holder of that mortgage was also threatening to foreclose. In addition to those previously paid by the first mortgagee,

there were delinquent taxes and water assessments for $984.29. Two judgments had been recently recovered against Mrs. Murray, aggregating $705.62. A chattel mortgage upon her horses and farm machinery was past due, and was in process of foreclosure. Upon this there was due, for interest and costs, $1,030.35, making a total indebtedness of $12,903.48, all of which was pressing for payment. The horses and machinery necessary for the operation of the farm had been seized under the chattel mortgage, thus depriving Mrs. Murray of the indispensable means of tilling the farm. At that time the property was worth about $15,000. Mrs. Murray had exhausted every means to meet the crisis in her affairs. She had appealed to her relatives. A scheme had been developed by which her neighbors were to give a joint note to provide for all of the indebtedness, except the principal of the first mortgage. But after a full canvassing of her matters this fell through. A Mr. Stitt was on the point of buying the property for $15,000, if satisfactory arrangements could be made as to the terms of payment, and certain other minor matters. At this stage a Mr. Giese, superintendent of the Great Western Sugar Company, a friend of Mrs. Murray, and a business man of large experience, intervened in her behalf, and applied to Mr. Roediger, the president of the M. L. More Investment Company, to see if some arrangement could not be made to meet the crisis in her affairs. The matter was fully canvassed between him, Mr. Roediger, and Mrs. Murray.

This conference resulted in an agreement which was reduced to writing, and embodied in several instruments. Those which concern us chiefly are the following: (a) The warranty deed conveying the land and water rights to M. L. More Investment Company. (b) An option agreement from that company to Mrs. Murray, granting her an option to purchase the property on or before January 1, 1916, upon payment of the amount due the Investment Company for prior debt, for advances made to meet the crisis, and for future advances during the cropping season. This instrument stated in unmistakable terms that it "is not nor is it intended to be a mortgage by the party of the second part to the party of the first part"; that it constitutes only "an option to purchase granted to the party of the second part"; and that "the party of the second part is not personally obligated to make such purchase or to pay such sums or any part thereof to the party of the first part." (c) A contract by Mr. Roediger to Mrs. Murray, agreeing to pay her $15,000 any time on or before January 1, 1916, for the surrender of her said option to purchase the property. (d) A lease of the property from the Investment Company to Mrs. Murray for the cropping season from February 28, 1915, to February 28, 1916.

These instruments provided Mrs. Murray with funds to meet all of her pressing obligations, and with new advances indispensable for the farming season, and granted her an option to purchase the property at any time prior to January 1, 1916, upon repaying to the Investment Company the amount of its old debt and new advances. It further secured to her an absolute obligation on the part of Mr. Roediger, a responsible man, to buy the property at any time during the term pro-

vided by the option for the highest price that she had been offered for it. One of the objects of both parties to the agreements was to save the expense of foreclosing the mortgage, and yet secure to Mrs. Murray all the rights of a redemptioner for a term longer than the six months allowed by the statutes of Colorado for redemption. Before these instruments were signed, Mrs. Murray received the advice of an able and experienced lawyer, who had been her counselor during all the time that she had been trying to meet the crisis in her affairs. He sat at her side and read over aloud with her every one of the instruments, explained their provisions and legal effect, and made sure that they accurately expressed the things that she had agreed to. They were then signed and delivered.

Because of the different views of the referee and the trial court, we have carefully studied the entire evidence and briefs of counsel. As the result of that study we are convinced that the transaction, viewed from the standpoint of Mrs. Murray's situation, was wise, and from the standpoint of the Investment Company and Mr. Roediger, its president, was fair and just, not to say generous. The evidence, instead of showing that the warranty deed was intended as a mortgage, shows to a moral certainty that such was not its purpose in the mind of any of the parties. Why has an arrangement thus providently made failed to accomplish its purpose? Because Mrs. Murray wholly failed to observe its provisions. She waited until the 10th of January, 1916, and had then developed a new scheme for the sale of the property, and applied to the Investment Company for an extension of time during which she hoped to consummate that arrangement, and sell the property for a larger sum than $15,000. The Investment Company refused to extend the time. She promptly filed her voluntary petition in bankruptcy. A trustee was presently elected who immediately entered upon this fruitless litigation.

The law which controls this case is plain. It is set forth in Wallace v. Johnstone, 129 U. S. 58, 9 Sup. Ct. 243, 32 L. Ed. 619; Coyle v. Davis, 116 U. S. 108, 6 Sup. Ct. 314, 29 L. Ed. 583; Howland v. Blake, 97 U. S. 624, 24 L. Ed. 1027. The decision of the case needs only a fair and impartial application of the facts to well-established rules of law.

The judgment is affirmed.